**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Janice FORTIN and Richard Fortin,**
**Defendants-Appellants.**

**No. 81-5725.**

United States Court of Appeals,
Eleventh Circuit.

Sept. 16, 1982.

Federico A. Moreno, Miami, Fla., court appointed, for defendants-appellants.

James McMaster, Asst. U. S. Atty., James McAdams, III, Miami, Fla., for plaintiff-appellee.

Before VANCE and ANDERSON, Circuit Judges, and ALLGOOD *, District Judge.

PER CURIAM:

Appellants have been convicted of criminal contempt for refusing to testify in the criminal trial of one Donald Ward. At issue here is the question of whether or not their refusal to testify was protected by their privilege against self-incrimination under the Fifth Amendment. We hold that their refusal was protected and therefore reverse their convictions.

In May of 1981, appellants pled guilty in a federal district court in Georgia to

* Honorable Clarence W. Allgood, U. S. District Judge for the Northern District of Alabama,  sitting by designation.

charges of passing counterfeit currency. In the course of his Rule 11 proceeding, and at his sentencing, appellant Richard Fortin testified that he purchased the counterfeit currency from an unknown individual driving a truck near Tampa, Florida. At those same proceedings, appellant Janice Fortin testified that she received the currency from her husband, Richard. Both appellants, however, had previously given sworn statements to Secret Service Agents that the source of the currency was Donald Ward, Mrs. Fortin's brother.

Both appellants were called by the Government to testify at the trial of Donald Ward in the Southern District of Florida. Relying upon the Fifth Amendment, they refused to testify concerning the source of the currency unless given immunity from any potential perjury prosecution. The Government refused. The court determined that, by virtue of their guilty pleas and previous statements, they had waived their right against self-incrimination. Upon their continued refusal to testify and their failure to show cause for such refusal, the court found them guilty of criminal contempt and gave them each six month sentences.

■ The law is clear, and the Government concedes, that a plea of guilty waives the right against self-incrimination only as to matters which might incriminate the defendant of the particular crime to which the plea is made. It does not constitute a waiver with respect to information which could subject the defendant to a separate prosecution. *E.g., United States v. Metz,* 608 F.2d 147, 156 (5th Cir. 1979), *cert. denied, Metz v. United States,* 449 U.S. 821, 101 S.Ct. 80, 66 L.Ed.2d 24 (1980). In this context, appellants point out that despite their prior guilty pleas on the counterfeit charges, had they testified at the Ward trial, their testimony, even if truthful, would necessarily have contradicted one or the other of their prior sworn statements. They argue, therefore, that such testimony could have been used against them in separate perjury prosecutions as to one or the other of such statements.

■ Appellants' argument is well taken. As a preface to its survey of the cases in which the privilege against self-incrimination had been found to have been waived, the Supreme Court noted in 1896 that it was only in cases where the testimony sought "[could not] possibly [have been] used as a basis for, or *in aid of,* a criminal prosecution against the witness" that the privilege had not been upheld. *Brown v. Walker,* 161 U.S. 591, 597, 16 S.Ct. 644, 647, 40 L.Ed. 819 (1896) (emphasis added). Had the appellants testified at the Ward trial, their testimony could have been used "in aid of" potential perjury charges. It certainly was not "perfectly clear" from a careful consideration of all the circumstances that their testimony could not "possibly" have had a tendency to incriminate. *See generally Hoffman v. United States,* 341 U.S. 479, 488, 71 S.Ct. 814, 819, 95 L.Ed. 1118 (1951).

Notwithstanding the above principles, however, the Government argues that appellants had waived their Fifth Amendment privilege by virtue of their prior inconsistent statements. The Government cites *Rogers v. United States,* 340 U.S. 367, 373, 71 S.Ct. 438, 442, 95 L.Ed. 344 (1951), for the proposition that "where criminating facts have been voluntarily revealed, the privilege cannot be invoked to avoid disclosure of the details." It is contended that the existence of prior inconsistent sworn statements was already sufficiently incriminating as to the crime of perjury so as to effectively result in a waiver by the appellants of their right to not further discuss the matter.

While the rule being urged by the Government is a valid one, it is generally only applicable when the "disclosure of the details" is being sought in the same proceeding where the initial "criminating facts have been voluntarily revealed." *E.g., United States v. St. Pierre,* 132 F.2d 837, 839 (2nd Cir. 1942) (L. Hand, J.), *cert. dismissed as moot, St. Pierre v. United States,* 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199 (1943). It has been held that

[t]he privilege [against self-incrimination] attaches to the witness in each particular case in which he may be called on to

testify, and whether or not he may claim it is to be determined without reference to what he said when testifying as a witness on some other trial, or on a former trial of the same case, and without reference to his declarations at some other time or place.

*In re Neff*, 206 F.2d 149, 152 (3rd Cir. 1953). *See Ballantyne v. United States*, 237 F.2d 657, 665 (5th Cir. 1956) (citing *In re Neff* with approval). *Cf. United States v. Wilcox*, 450 F.2d 1131, 1141–42 (5th Cir. 1971) (involving concerns that the scope of questioning at the second trial might be broader than at the first) *cert. denied Wilcox v. United States*, 405 U.S. 917, 92 S.Ct. 941, 30 L.Ed.2d 787 (1972). This principle is generally accepted as "hornbook law,"[1] and, with one exception,[2] has been adopted by all federal courts which have considered it. *See Annot.*, 42 A.L.R.Fed. 793 (1979) and cases cited therein. It controls the disposition of the case at bar. Accordingly, the criminal contempt convictions of the appellants must be reversed and their cases remanded to the trial court for the entering of orders of acquittal.

REVERSED and REMANDED with instructions.

---

1. *United States v. Cain*, 544 F.2d 1113, 1117 (1st Cir. 1976). *See* 81 Am.Jur.2d, *Witnesses* § 65 (1976) and *Annot.*, 36 A.L.R.2d 1403 (1954) and the cases cited therein.

2. *Ellis v. United States*, 416 F.2d 791, 805 (D.C. Cir.1971) (rejecting *In re Neff* as formalistic).