574 A.2d 1107

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Carl Vernon NELSON, Carl Vernon Nelson, Carl V. Nelson, Carl Vernon Nelson.**

Superior Court of Pennsylvania.

Submitted Oct. 10, 1989.

Filed May 8, 1990.

612

Rene Heilman, Asst. Dist. Atty., Warren, for Com., appellant.

Kenneth L. Crosby, Warren, for appellee.

Before OLSZEWSKI, KELLY and JOHNSON, JJ.

OPINION BY OLSZEWSKI, Judge:

This is an appeal by the Commonwealth from an order granting appellee relief under the Post Conviction Relief Act, 42 Pa.C.S.A. § 9541 *et seq.* ("PCRA").[1] Appellee, Carl Vernon Nelson, filed a *pro se* petition for post-conviction relief on September 9, 1988, which was supplemented by an amended petition filed by counsel on December 6, 1988. Appellee's amended petition alleged, *inter alia,* violation of appellee's rights under the United States Constitution and

---

1. The Post Conviction Hearing Act, 42 Pa.C.S.A. § 9541, *et seq.* has been modified in part, repealed in part, and renamed the Post Conviction Relief Act by Act of April 13, 1988, No. 47, §§ 3–4 (codified as amended at 42 Pa.C.S.A. § 9541–46 (Purdon supp. 1989). Since appellee's petition was filed after the effective date of April 13, 1988, it is controlled by the provisions of the PCRA.

the Pennsylvania Constitution, ineffective assistance of counsel, and a plea of guilty unlawfully induced.[2]

The undisputed facts, as summarized by the PCRA judge, are as follows:

On August 25, 1977, Defendant was arrested for the slaying of Jess Perry and his attempt to kill Perry's daughter. As a result of plea negotiations on charges of homicide, Defendant entered a guilty plea to third degree murder and attempted murder, and in doing so [inculpated] Thomas Eaton and gave sworn statements Eaton had solicited Defendant to murder the victim, giving him the murder weapon and ammunition to do so. As a result Eaton was charged with solicitation of murder and violation of the Uniform Firearms Act. Eaton was granted a change of venue to Mercer County on those charges, and Defendant was subpoenaed from his imprisonment to the trial by the District Attorney as a Commonwealth witness. Prior to Defendant's perjured testimony,[3] he had recanted his accusations against Eaton to Eaton's counsel which was also known by the District Attorney of Warren County, and this possible recantation at the Eaton trial was made known to the trial Judge with a request the Court call Defendant as a court witness in the Eaton trial. Without counsel, Defendant was compelled by the Court

**2.** Appellee's amended PCRA petition lists five of the eight possible circumstances eligible for post-conviction relief under the PCRA, 42 Pa.C.S.A. § 9543(a)(2).

**3.** The PCRA court states in its opinion that the testimony appellee gave at the trial of Thomas Eaton in Mercer County on October 11, 1978 was perjured and that this testimony "consummated his perjury[.]" It is not clear from the record which of appellee's testimony concerning Thomas Eaton was true and which was false. We note, however, that nowhere in the record is it indicated that appellee was ever prosecuted on the basis that the testimony in question, given on October 11, 1978, was false, nor was appellee prosecuted under 18 Pa.C.S.A. § 4902(e), which requires the Commonwealth to prove only that a defendant made inconsistent statements under oath. Appellee's prosecution was based on the theory that his testimony of October 11, 1978 was truthful, and that four prior statements made by appellee on April 18, 1978, April 19, 1978, May 10, 1978, and May 24, 1978 were false. In the analysis which follows, therefore, we consider appellee's testimony of October 11, 1978 as a confession which incriminated him in prior crimes of perjury and false swearing.

to testify [on October 11, 1978] and consummated his perjury, notwithstanding Defendant's attempt to plead the Fifth Amendment, which was denied by the Court. As a result of the recantation, Defendant was charged in Warren County with the aforesaid perjury and false statements. Court-appointed counsel was assigned to Defendant on these charges, and again Defendant entered a plea of guilty [4] before the Warren [County] Court with his counsel advising the Court there was no viable defense.

On December 7, 1988, after argument on Defendant's petition, [the P.C.R.A. court] granted Defendant leave to withdraw his guilty plea to the perjury and false statement charges, however, conditioned the withdrawal granting leave to the Commonwealth to supplement the records of both Warren and Mercer County courts that would show any evidence that would reasonably require a different disposition. At the Commonwealth's request [the court] held an evidentiary hearing with Defendant present and represented by court-appointed counsel. At this hearing [the court] gave the Commonwealth wide latitude to show any evidence Defendant was not entitled to the relief sought.

P.C.R.A. court opinion at 4–5. On March 3, 1989, the PCRA court issued an order granting appellee leave to withdraw his guilty pleas to perjury and false swearing. From this order the Commonwealth appeals. Because the PCRA court properly determined that appellee was entitled to relief, we affirm its decision.

■ The Commonwealth's sole issue in this appeal is, "Whether appellee's testimony exculpating Eaton at Eaton's trial was compelled, where appellee, aware of his fifth amendment rights, freely and voluntarily testified on direct examination, and subsequently claimed the fifth amendment on cross-examination?" This argument relates only to

4. Appellee entered guilty pleas on January 22, 1979 to three counts of perjury, 18 Pa.C.S.A. § 4902(a), and one count of false swearing, 18 Pa.C.S.A. § 4903(a)(2).

whether the requirements of 42 Pa.C.S.A. § 9543(a)(2) were met by appellee.[5]

## I.

■ In reviewing an order granting a PCRA petition, we follow the same standard applicable under the former Post Conviction Hearing Act ("PCHA").[6] We look to whether the PCRA court's determination is supported by evidence of record, and is otherwise free of legal error. *Commonwealth v. Lutz*, 492 Pa. 500, 424 A.2d 1302 (1981). This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding. *Commonwealth v. Stokes*, 294 Pa.Super. 529, 440 A.2d 591 (1982).

## II.

In order to set aside a plea of guilty under the former PCHA, a defendant was required to demonstrate three things: first, the existence of constitutionally infirm incrim-

5. The Commonwealth does not argue that any of the other elements required for relief under 42 Pa.C.S.A. § 9543(a) are not present in the instant case. By not arguing, the Commonwealth has conceded that the requirements of §§ 9543(a)(1), 9543(a)(3) and 9543(a)(4) were pleaded and proved by appellee. A review of the record and the applicable law convinces us that all of these elements were present. Aside from a conclusory sentence devoid of legal argument, the Commonwealth does not argue that the PCRA court erred in finding that appellee's sixth amendment rights to representation by effective counsel were violated. Neither does the Commonwealth argue: (1) that appellee's guilty plea was not primarily motivated by the existence of appellee's confession of October 11, 1978; (2) that appellee's guilty plea counsel had any reasonable basis for counseling appellee to plead guilty rather than proceeding to trial and challenging the admissibility of appellee's confession; or (3) that appellee did not suffer prejudice from prior counsel's failure to challenge the admissibility of appellee's confession. While we discuss our reasoning in full, we note that the Commonwealth has waived all issues except whether appellee's rights against self-incrimination were violated when he confessed while testifying at Thomas Eaton's trial. *Commonwealth v. Jackson*, 494 Pa. 457, 459 n. 1, 431 A.2d 944, 945 n. 1 (1981); *Commonwealth v. Anderson*, 381 Pa.Super. 1, 13 n. 3, 552 A.2d 1064, 1070 n. 3 (1988).

6. Former 42 Pa.C.S.A. §§ 9541–51, modified in part, repealed in part, and renamed the Post Conviction Relief Act by Act of April 13, 1988, No. 47, §§ 3–4.

inating evidence; second, that the guilty plea was primarily motivated by the existence of such evidence; and third, that the defendant was incompetently advised by counsel to plead guilty rather than stand trial. *Commonwealth v. Marsh*, 440 Pa. 590, 271 A.2d 481 (1970) (*"Marsh I"*). Accord *Commonwealth v. Marsh*, 460 Pa. 253, 333 A.2d 181 (1975) (*"Marsh II"*); *Commonwealth v. Miller*, 494 Pa. 229, 236–237, 431 A.2d 233, 236 (1981). The criteria stated in *Marsh I* apply both on direct appeal and in collateral proceedings. *Commonwealth v. Swift*, 299 Pa.Super. 77, 81 n. 2, 445 A.2d 156, 157 n. 2 (1982).

Like the former PCHA, the PCRA authorizes a grant of postconviction relief based on the violation of constitutional rights, ineffective assistance of counsel, or an unlawfully induced guilty plea.[7] The PCRA, however, has additional

7. The former PCHA provided:
   § 9543. **Eligibility for relief**
   To be eligible for relief under this subchapter, a person must ... prove the following

   \* \* \* \* \* \*

   (3) That his conviction or sentence resulted from one or more of the following reasons:

   \* \* \* \* \* \*

   (iii) The introduction of a coerced confession into evidence.

   (iv) The introduction into evidence of a statement obtained in the absence of counsel at a time when representation is constitutionally required.

   (v) The infringement of his privilege against self-incrimination under either federal or state law.

   (vi) The denial of his constitutional right to representation by competent counsel.

   (vii) A plea of guilty unlawfully induced.
   42 Pa.C.S.A. § 9543 (Purdon 1982).
   The PCRA provides:
   § 9543. **Eligibility for relief**
   (a) General rule.—To be eligible for relief under this subchapter, a person must plead and prove by a preponderance of the evidence
   ...

   \* \* \* \* \* \*

   (2) That the conviction or sentence resulted from one or more of the following:

   \* \* \* \* \* \*

   (i) A violation of the Constitution of Pennsylvania or laws of this Commonwealth or the Constitution of the United States which, in the circumstances of the particular case, so undermined the truth-

requirements which we read into the *Marsh I* test. The first factor of the *Marsh I* test requires the existence of constitutionally infirm incriminating evidence, while the PCRA adds the requirement that, "in the circumstances of the particular case, [the existence of the evidence] so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(i). The second factor of the *Marsh I* test requires that the guilty plea be "primarily motivated" by the infirm evidence, while the PCRA requires that the circumstances surrounding the guilty plea "make it likely that the [constitutionally infirm incriminating evidence] caused [the] individual to plead guilty." [8] The third factor of the *Marsh I* test requires that the defendant have been incompetently advised by counsel to plead guilty rather than stand trial, while the PCRA adds the requirement that counsel's incompetence "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. 42 Pa.C.S.A. § 9543(a)(2)(ii). We will proceed to analyze whether the PCRA court erred in finding that appellee had satisfied the dictates of the *Marsh I* test, as modified by 42 Pa.C.S.A. § 9543(a)(2).

### III.

The first factor of the *Marsh I* test requires us to determine whether the testimony appellee gave at Thomas Eaton's trial on October 11, 1978 was constitutionally in-

> determining process that no reliable adjudication of guilt or innocence could have taken place.
>     (ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.
>     (iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused an individual to plead guilty.
> 42 Pa.C.S.A. § 9543 (Purdon supp. 1989).

**8.** The PCHA did not require that the existence of constitutionally infirm incriminating evidence be the *sole* motivation behind the guilty plea. *Commonwealth v. Swift,* 299 Pa.Super. 77, 85 n. 5, 445 A.2d 156, 160 n. 5 (1982).

firm. Appellee entered pleas of guilty to third-degree murder and attempted murder before he testified at the Mercer County trial of Thomas Eaton. At the time of Eaton's trial appellee was serving a prison sentence for murder and attempted murder, but had not yet pleaded guilty to perjury and false swearing. Indeed, it would have been impossible for him to have pleaded guilty because the perjury and false swearing charges were not filed until November 15, 1978, 35 days after appellee confessed at Eaton's trial.

It is undisputed that the district attorney, Eaton's attorney, and the trial court all knew before appellee was called to testify that appellee had recanted his prior testimony implicating Eaton. Furthermore, the parties took the unusual step of having appellee called as a witness for the court in order to allow both the prosecution and defense attorneys to cross-examine appellee. Appellee was transported from his prison cell to Mercer County and testified under subpoena. He was not represented by counsel and was not advised by the court, by the district attorney or by Eaton's defense attorney that he had any rights against incriminating himself concerning prior perjury or false swearing. It was not until after appellee had inextricably implicated himself that the district attorney even suggested to appellee the possible consequences of his testimony. When appellee attempted twice to assert his fifth amendment rights on his own he was rebuffed. The first time appellee asserted his rights, he was ignored. The second time he was told, by the trial judge: "[Y]ou have no right to plead the Fifth Amendment. You pled guilty to the crime which you were charged with and you have no right and we will instruct you to answer the question, please." Transcript of October 11, 1978, at 64.

■ A plea of guilty to a criminal charge is generally regarded as a waiver of the privilege against self-incrimination with respect to that charge. *Commonwealth v. Strickler*, 481 Pa. 579, 393 A.2d 313 (1978). The rationale behind this rule is that once a person has been convicted of a particular crime, it is not possible to become any more

incriminated with respect to that same crime. *See Commonwealth v. Rodgers,* 472 Pa. 435, 372 A.2d 771 (1977). By pleading guilty to one charge, however, a defendant does not waive his privilege not to incriminate himself in other crimes. *United States v. Yurasovich,* 580 F.2d 1212 (3rd Cir.1978). *Accord United States v. Zirpolo,* 704 F.2d 23 (1st Cir.), *cert. denied,* 464 U.S. 822, 104 S.Ct. 87, 78 L.Ed.2d 96 (1983).

Specifically relating the law of self-incrimination to the crime of perjury, one federal court has stated:

a witness may not claim the [fifth amendment] privilege out of fear that he will be prosecuted for perjury for what he is about to say, although he may claim the privilege if his new testimony might suggest that he had perjured himself in testifying on the same subject at a prior proceeding.

*United States v. Partin,* 552 F.2d 621, 632 (5th Cir.), *cert. denied,* 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977). *See also United States v. Fortin,* 685 F.2d 1297 (11th Cir.1982) (guilty plea to counterfeiting charges does not waive right against self-incrimination with respect to potential perjury prosecution).

In the instant case, the Commonwealth has never alleged that appellee's testimony of October 11, 1978 constituted perjury. The Commonwealth's theory throughout has been that appellee's testimony on that date was a confession which implicated him in prior crimes of perjury and false swearing.[9]

The Commonwealth cites *Commonwealth v. Tracey,* 137 Pa.Super. 221, 8 A.2d 622 (1939), for the proposition that appellee's guilty pleas to murder and attempted murder waived his right not to incriminate himself in perjury and

9. Had the situation been reversed and appellee's statements of October 11, 1978 been the subject of a perjury prosecution, appellee would not have been protected against self-incrimination. *United States v. Partin,* 552 F.2d 621, *supra. See also United States v. Yurasovich,* 580 F.2d 1212, 1219 (3rd Cir.1978) (noting "the maxim that the Fifth Amendment does not protect perjury").

false swearing.[10] The Commonwealth fails to point out, however, that *Tracey* was predicated on the assumption "that the witness' testimony would have related to the crime which he admitted by his plea[.]" *Id.*, 137 Pa.Superior Ct. at 225, 8 A.2d at 624. Appellee's right against self-incrimination as to the perjury and false swearing charges, therefore, remained intact at the time he was called to testify against Thomas Eaton in Mercer County.

■ The Commonwealth argues that appellee should have notified the district attorney, Eaton's attorney, or the court that he intended to exercise his right not to incriminate himself, before he testified on October 11, 1978. Nowhere does *Commonwealth v. Cieri*, 346 Pa.Super. 77, 499 A.2d 317 (1985), cited by the Commonwealth, hold that a witness must reserve in advance his constitutional right not to incriminate himself. *Cieri* is premised on the assumption that a witness knows he is a criminal suspect, and holds that if it is clear that the witness will plead the fifth amendment, he need not be called to testify. As we note elsewhere in this opinion, although the district attorney asked the judge to notify appellee of his rights, neither the district attorney, the defense attorney, nor the judge actually did notify appellee of his rights before he testified. This was despite the awareness of all three that appellee had recanted his prior testimony.

■ The Commonwealth also argues that appellee waived his rights against self-incrimination by testifying on direct examination. While it is possible to waive even constitutional rights,

> the waiver of a constitutional right must be made knowingly and intelligently; to be a knowing and intelligent waiver, the defendant must have been aware of both the right and the risks of forfeiting the same. *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938);

---

**10.** While the Commonwealth cites *Tracey* in reference to appellee's rights against self-incrimination under the fifth amendment to the United States Constitution, *Tracey* was decided under article I, § 9 of the Pennsylvania Constitution.

*Commonwealth v. Barnette*, 445 Pa. 288, 285 A.2d 141 (1971), *Commonwealth v. Mallon*, 279 Pa.Super. 350, 421 A.2d 234 (1980). Waiver of a constitutional right cannot be presumed from a silent record, and the presumption must always be against waiver of a constitutional right. *Commonwealth v. Johnson*, 319 Pa.Super. 463, 472, 466 A.2d 636, 641 (1983). *Accord Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Nowhere does the record indicate that appellee was advised before testifying either of his right not to incriminate himself or of his right to representation by counsel. When appellee did attempt to assert his rights against self-incrimination, the judge ordered him to testify, stating incorrectly that appellee's prior guilty pleas to murder and attempted murder took away his rights against self-incrimination.

The Supreme Court states, in *Miranda v. Arizona*,

"[T]he requisite of voluntariness is not satisfied by establishing merely that the confession was not induced by a promise or a threat. A confession is voluntary in law if, and only if, it was, in fact, voluntarily made. A confession may have been given voluntarily, although it was made to police officers, while in custody, and in answer to an examination conducted by them. But a confession obtained by compulsion must be excluded whatever may have been the character of the compulsion, and whether the compulsion was applied in a judicial proceeding or otherwise. *Bram v. United States*, 168 U.S. 532 [18 S.Ct. 183, 42 L.Ed. 568 (1897) ][.]"

*Miranda v. Arizona*, 384 U.S. 436, 462, 86 S.Ct. 1602, 1621, 16 L.Ed.2d 694, 716–717 (1966).

We cannot agree with the Commonwealth's suggestion that appellee's uncounseled testimony, which he gave under subpoena, and was brought from his prison cell to give, constituted a voluntary waiver of his right against self-incrimination. Appellee's confession, compelled and without the assistance of counsel, constituted a violation of his rights against self-incrimination, both under the fifth amendment of the U.S. Constitution, and under article I, § 9

of the Pennsylvania Constitution. *Strickler, supra; Commonwealth v. Fisher,* 398 Pa. 237, 157 A.2d 207 (1960). We find further that the egregious circumstances of the instant case more than satisfy the additional requirement of the PCRA that, "in the circumstances of the particular case, [the existence of the evidence] so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(i). As the evidence incriminating appellee was constitutionally infirm, the first factor of the *Marsh I* test has been satisfied.[11]

## IV.

■ The second factor of the *Marsh I* test, as modified by the PCRA, requires us to determine whether "the circumstances make it likely" that the unchallenged existence of appellee's confession caused him to plead guilty. 42 Pa.C.S.A. § 9543(a)(2)(iii). Both appellee and his guilty plea counsel testified that the existence of the statements appellee made at Eaton's trial was the sole motivating factor for appellee's guilty plea. PCRA Transcript of January 19, 1989, at 3–7, 33. There was, therefore, evidence in the record to support the PCRA court's finding that appellee's guilty plea was primarily motivated by the involuntary confession. The PCRA court's finding that appellee's guilty plea fulfilled the "primarily motivated" requirement of *Marsh I* also satisfies the PCRA's requirement that "the circumstances make it likely that the [confession] caused [appellee] to plead guilty." The second factor of the *Marsh I* test is therefore satisfied.

## V.

■ Finally, *Marsh I, as modified by the PCRA,* requires us to determine whether appellee was incompetently ad-

11. As this is the only issue which the Commonwealth argues on appeal, we affirm the Order of the PCRA court on the basis of our discussion up to this point. *See supra* note 5. We continue our analysis to illustrate that, even had the Commonwealth properly raised and argued the issues mentioned in note 5, *supra,* our result would be unchanged.

vised by counsel to plead guilty rather than stand trial, and that counsel's ineffectiveness, "in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). In analyzing a claim of ineffective assistance of counsel, our courts apply a three-factor test:

We inquire first whether the underlying claim is of arguable merit; that is, whether the disputed action or omission by counsel was of questionable legal soundness. If so, we ask whether counsel had any reasonable basis for the questionable action or omission which was designed to effectuate his client's interest. If he did, our inquiry ends. If not, [we will reach a conclusion of ineffective assistance if the defendant] demonstrates that counsel's improper course of conduct worked to his prejudice, i.e., had an adverse effect upon the outcome of the proceedings.

*Commonwealth v. Davis*, 518 Pa. 77, 83, 541 A.2d 315, 318 (1988). As we have already determined that appellee's self-incrimination claim is meritorious, *see supra*, we may proceed directly to the second stage of the ineffectiveness analysis and ask whether appellee's prior counsel had any reasonable basis for counseling appellee to plead guilty to perjury rather than proceeding to trial and challenging the admissibility of appellee's confession. Appellee's former counsel was asked if he had ever thought of filing a motion to suppress the transcript from the Mercer County trial of Thomas Eaton:

A No, I did not. I can recall that I gave some thought to the question of whether he had any privileges against self-incrimination and I concluded that that was of no avail to me and it never occurred to me that there might be any Miranda Warnings necessary.... I later learned just very recently that, perhaps, he did not have a lawyer with him in Mercer [County] at the time he made the statement

Q  If I may interrupt, so ten years ago when Mr. Nelson plead guilty, were you aware that he didn't or were you aware whether he had an attorney there or not?

A  I am confident I had assumed that he did and it's only recently that I learned, perhaps, he did not. . . .

PCRA transcript of January 19, 1989, at 5. It is clear from the record that at the time he counseled appellee to plead guilty, counsel had not even considered whether appellee's testimony of October 11, 1978 was admissible. Evidence in the record therefore supports the PCRA court's finding that appellee's former counsel had no reasonable basis for his recommendation that appellee plead guilty, rather than move to suppress appellee's uncounseled confession of October 11, 1978.

The final factor which must be present in order to find appellee's former representation ineffective is prejudice. Appellee must demonstrate that the choice of going to trial and challenging the admissibility of his October 11, 1978 testimony offered a substantially greater potential for success than pleading guilty. *Commonwealth v. Taylor*, 348 Pa.Super. 256, 502 A.2d 195 (1985).

In this case, the only indication in the record concerning the evidence against appellee appears in the probable cause affidavits attached to the four criminal complaints filed on November 15, 1978. All four affidavits allege that the affiant saw and heard appellee give one version of the story concerning the shootings of August 25, 1977 before October 11, 1978, and a different version of the story when he testified on October 11, 1978. If appellee had gone to trial and successfully challenged the admissibility of his confession, we are not aware of any evidence the Commonwealth would have presented against him, except for his original statements of April 18, 1978, April 19, 1978, May 10, 1978 and May 24, 1978. Since the only evidence admissible against appellee would have been of four consistent statements, with no proof that the statements were untrue, appellee was clearly prejudiced by prior counsel's failure to challenge the admissibility of his confession. We find fur-

ther that counsel's ineffectiveness satisfies the additional requirement of the PCRA, 42 Pa.C.S.A. § 9543(a)(2)(ii), that the ineffectiveness, "in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."

As all of the *Marsh I* factors, as modified by the PCRA, have been satisfied, we affirm the PCRA court's grant of relief. Order affirmed.

KELLY, J., dissents.

KELLY, Judge, dissenting.

I agree that appellee's constitutional rights were violated when the trial court failed to honor his assertion of his Fifth Amendment right against compulsory self incrimination. I emphasize though, that I would not find open court to be a custodial setting warranting *Miranda* warnings to a prisoner witness facing a so-called "perjury trap." *Commonwealth v. Williams*, 388 Pa.Super. 153, 565 A.2d 160 (1989); *Commonwealth v. Melson*, 383 Pa.Super. 139, 163–75, 556 A.2d 836, 848–53 (1989) (Kelly, J., dissenting). However, when, as here, the prisoner witness in open court asserts his Fifth Amendment rights not to confess *past* perjury, that right must be honored. Here, that right was not honored.

My disagreement with the majority has to do with its construction of 42 Pa.C.S.A. § 9543(a)(2)(i) and 42 Pa.C.S.A. § 9543(a)(2)(ii). Succinctly, the fact that appellee's in-court confession was excludable, and that the Commonwealth may or may not have been able to prove appellee's perjury without that confession, in no way undermines *the reliability* of the adjudication of guilt which resulted from appellee's subsequent guilty plea. *See Commonwealth v. Ryan*, 523 Pa. 547, 568 A.2d 179 (1990).

Here, as in *Ryan*, the defendant acknowledged guilt and made no timely attempt to withdraw or challenge the plea,

but later challenged his plea in a PCRA proceeding.[1] The PCRA challenge was not on the basis of facts suggesting *possible innocence* or *false* confession, but on facts suggesting that prior counsel had overlooked the potential exclusion of the most damaging evidence known to be available against appellee, and that had appellee known that, he might not have pled guilty. Such claims are not cognizable under the new PCRA.

Our legislature has restricted the grounds for relief via PCRA proceedings to constitutional violations "which, in the circumstances of the particular case, so undermine the truth determining process that no reliable adjudication of guilt could have taken place." 42 Pa.C.S.A. §§ 9543(a)(2)(i) and (ii). I see nothing in this record which could reasonably shake one's confidence in the *reliability* of the verdict. Appellee's counsel's ineffectiveness denied appellee information which might have altered appellee's assessment of whether the Commonwealth could *prove*, what the excludable *but nonetheless reliable* evidence would have conclusively established, *i.e.* appellant's guilt.

Similarly, I find no "unlawful inducement" (42 Pa.C.S.A. § 9543(a)(2)(iii), which may be said to have motivated the plea. Ignorance of grounds to suppress *reliable* evidence is not an "unlawful inducement" to plead guilty.

Essentially, appellant lost the chance to risk a throw of the dice. I do not read the new PCRA act to provide for the recovery of such losses.

Hence, I respectfully dissent.

---

1. *Ryan* also involved a *serial* ineffectiveness claim, as well as evidence of a purgation of guilt motive to confess. Nonetheless, the critical similarity here, is the dispositive factor under the PCRA.