J-S56042-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DWAYNE ALLAN HOLLINGER, | |
| Appellant | No. 519 MDA 2015 |

Appeal from the PCRA Order March 4, 2015
in the Court of Common Pleas of Lebanon County
Criminal Division at No.: CP-38-CR-0001372-2011

BEFORE:  SHOGAN, J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:               **FILED NOVEMBER 17, 2015**

Appellant, Dwayne Allan Hollinger, appeals from the order of March 4, 2015, which dismissed, following a hearing, his first, counseled petition brought under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  On appeal, Appellant claims he received ineffective assistance of counsel at all stages of the underlying proceedings.  We affirm.

We take the underlying facts and procedural history in this matter from the PCRA court's March 4, 2015 opinion and our independent review of the certified record.

On July 19, 2011, the Commonwealth charged Appellant with rape, involuntary deviate sexual intercourse (IDSI), burglary, two counts each of

_____

[*] Retired Senior Judge assigned to the Superior Court.

false imprisonment and simple assault for an incident that occurred on July 17, 2011. The Lebanon County Public Defender's Office accepted Appellant's case on July 19, 2011. (*See* Motion for Appointment of Conflict Counsel, 10/13/11, at 1).

On October 13, 2011, Chief Public Defender Brian Deiderick moved to withdraw, citing a conflict of interest. (*See id.*). On October 14, 2011, the trial court appointed Mark Schappell, Esquire to represent Appellant.

> Trial was originally scheduled to commence on January 12, 2012 before the Honorable Charles T. Jones. Prior to the commencement of trial, however, it was called to the [trial c]ourt's attention that the victim . . . had not appeared despite the issuance of a subpoena. Detectives from the Lebanon City Police Bureau went to [the victim's] home and she then appeared before Judge Jones. [The victim] informed Judge Jones that she did not wish to testify or press charges. She insisted that the sexual acts involved in the case were consensual and that she loved [Appellant]. Due to [the victim's] statements, Judge Jones directed that the Public Defender's Office be appointed to represent her and continued [Appellant's] trial in this matter.
>
> A jury trial was then conducted in this matter on April 12, 2012 at which [the victim] appeared. At trial, [she] testified that she was nineteen years of age. She explained that she and [Appellant] had lived together at some point prior to July 17, 2011, but that she lived alone at the time of the incident. [The victim] resided in an efficiency apartment where she had her own room but shared kitchen and bathroom facilities with other tenants. On the evening of July 17, 2011, [the victim] arrived home at approximately 10:00 p.m. Soon afterward, [Appellant] knocked on her door. When she answered it, [Appellant] told her "I am here now and I am going to fuck you up." He then shut the door and began to slap [the victim's] face and choke her. After a brief period of time, [the victim] was able to convince [Appellant] to walk with her to a nearby Turkey Hill store. After going to the Turkey Hill, the two returned to [the victim's] porch. [Appellant] was looking for a place to stay that

night. After he finally left, [the victim] also left and spent the night at the home of a friend.

The following morning, [the victim] arrived back at her apartment at approximately 10:30 a.m. When she walked in, [Appellant] jumped out from behind her dresser, causing her to fall. He told her "now I am going to fuck you in your apartment. Other dudes—other guys sleep in my bed," and "you should be my girl." [Appellant] shut and locked the door, pushed [the victim] onto the bed and pulled her pants down. When [the victim] said "no," [Appellant] said "we are going to either fuck the easy way or the hard way." Despite [the victim's] continued efforts to resist him, [Appellant] performed oral sex on her and also engaged in vaginal sexual intercourse with her. [The victim] was five-months pregnant at the time and throughout this incident, [Appellant] repeatedly made threats to her. He also directed at least one threat to her unborn child.

[The victim] was ultimately able to escape from [Appellant] after he allowed her to go to the bathroom. [She] hid her cellphone in her towel and called for help. [The victim] was later examined at Good Samaritan Hospital where she exhibited facial swelling, tenderness and discoloration on her neck, a 6-centimeter bruise on her left breast, dried secretions on her right inner thigh, and tenderness to her vaginal wall and perineum.

When police later questioned [Appellant], he admitted that he did not have permission to enter [the victim's] apartment and had gained access by crawling through a window. He also admitted that he had slapped [the victim], that [she] had told him to stop when he was having sex with her, and that he had ignored her pleas to stop. [Appellant] made a recorded statement of the incident and a redacted version of that statement was played for the jury at trial.

(PCRA Court Opinion, 3/04/15, at 2-4) (record citations omitted).

On April 12, 2012, the jury found Appellant guilty of all charges. On June 14, 2012, the trial court issued an order stating that trial counsel was

"unable to perform his duty" and appointed Kevin Dugan, Esquire, to represent Appellant at sentencing. (Order of Court, 6/12/12, at 1).

On October 24, 2012, the trial court made a sexually violent predator (SVP) determination and held a sentencing hearing. Dr. Robert Stein, of the Pennsylvania Sexual Offender Assessment Board, testified as to the basis of his recommendation that the trial court should designate Appellant a SVP. (*See* N.T. Sentencing, 10/24/13, at 4-20). Following Dr. Stein's testimony, the trial court found Appellant was a SVP. (*See id.* at 21). The trial court, after noting that it reviewed the pre-sentence investigation report (PSI), sentenced Appellant to an aggregate term of incarceration of not less than eleven nor more than twenty-five years. (*See id.* at 28-30). On October 26, 2012, Attorney Dugan moved to withdraw his appearance, stating that the trial court had appointed him to represent Appellant at sentencing only. (*See* Petition to Withdraw Appearance, 10/26/12, at 1). On November 23, 2012, the trial court appointed Scott Stein, Esquire to represent Appellant.

> Appellate [c]ounsel filed [p]ost-[s]entence [m]otions [*nunc pro tunc*] on [Appellant's] behalf on December 11, 2012. In his [m]otion, [a]ppellate [c]ounsel raised several arguments, but indicated that he had not yet received a transcript of the prior proceedings and asked for leave to file additional bases for relief within fourteen days of receiving the transcript. We issued a [p]ost-[s]entence [s]cheduling Order which required that [Appellant's] [b]rief be filed by February 8, 2013. On February 7, 2013, [a]ppellate [c]ounsel requested additional time to file his [b]rief as he had not yet received a copy of the transcript of [Appellant's] jury trial. We extended the time for filing a [b]rief to March 15, 2013, with the [trial c]ourt's [o]pinion due on May 10, 2013 in accordance with Pa.R.Crim.P. 720.

The Commonwealth filed its [b]rief on May 8, 2013. Due to some confusion [on the part of the trial court], the trial transcript was not ordered until May 9, 2013 and [a]ppellate [c]ounsel was therefore unable to review it and prepare a [b]rief. Due to the time constraint for our decision on the [p]ost-[s]entence [m]otions pursuant to Rule 720, [the trial court was] required to file our [o]rder and [o]pinion on May 10, 2013. On that date, we entered an [o]rder with an accompanying [o]pinion in which we denied the [p]ost-[s]entence [m]otions.

(PCRA Ct. Op., at 17-18) (footnotes omitted).

On June 7, 2013, Appellant filed a timely notice of appeal. On appeal, Appellant challenged the weight and sufficiency of the evidence and raised two claims alleging the trial court deprived him of due process when the trial transcript was not made available to counsel and that, therefore, he could not amend his post-sentence motion. (**See Commonwealth v. Hollinger**, 1039 MDA 2013, unpublished memorandum at *3-*4 (Pa. Super. filed June 6, 2014). On June 6, 2014, this Court denied Appellant's direct appeal on the merits. (**See id.** at *4-*7). Appellant did not seek leave to appeal to the Pennsylvania Supreme Court.

On May 14, 2014, Appellant, acting *pro se*, filed a PCRA petition. On May 19, 2014, the PCRA court appointed counsel to represent Appellant. On July 16, 2014, counsel filed an amended PCRA petition. On September 29, 2014, a PCRA hearing took place. Appellant and three of his prior counsel: Mark Schappell, Kevin Dugan, and Scott Stein, testified at the hearing. On March 4, 2015, the PCRA court denied the petition. The instant, timely appeal followed. On March 20, 2015, the PCRA court ordered Appellant to

file a concise statement of errors complained of on appeal. *See* Pa.R.A.P.

1925(b). Appellant filed his timely Rule 1925(b) statement on March 30,

2015. On May 15, 2015, the PCRA court issued an opinion. *See* Pa.R.A.P.

1925(a).

On appeal, Appellant raises the following questions for our review:

1. Whether trial counsel was ineffective for failing to fully discuss the case with [Appellant]?

2. Whether trial counsel was ineffective for failing to file any pretrial motions on [Appellant's] behalf?

3. Whether trial counsel was ineffective for failing to properly cross-examine the alleged victim?

4. Whether trial counsel was ineffective for failing to object to the Commonwealth's trial continuance when the alleged victim changed her story?

5. Whether trial counsel was ineffective for abandoning [Appellant] after his trial?

6. Whether sentencing counsel was ineffective for failing to mention mitigating factors during sentencing?

7. Whether appellate counsel was ineffective for failing to file a post-sentencing brief?

8. Whether appellate counsel was ineffective for failing to timely file [Appellant's] Superior Court brief?

(Appellant's Brief, at 4-5) (unnecessary capitalization omitted).[1]

_____

[1] While this Court understands the duty to be a zealous advocate, we note that both the Federal and State Courts have longed stated that the raising of a multiplicity of issues on appeal raises the presumption that none have

*(Footnote Continued Next Page)*

Here, Appellant claims he received ineffective assistance of counsel at all stages of the proceedings below. (*See id.* at 9-25). It is long settled that "[o]ur standard of review from the grant or denial of post-conviction relief is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. We will not disturb findings that are supported by the record." *Commonwealth v. Ousley*, 21 A.3d 1238, 1242 (Pa. Super. 2011), *appeal denied*, 30 A.3d 487 (Pa. 2011) (citations omitted). "The court's scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party." *Commonwealth v. Duffey*, 889 A.2d 56, 61 (Pa. 2005) (citation omitted). Further, to be eligible for relief pursuant to the PCRA, Appellant must establish that his conviction or sentence resulted from one or more of the enumerated errors or defects found in Section 9543(a)(2). *See* 42 Pa.C.S.A. § 9543(a)(2). He must also establish that the issues raised in the PCRA petition have not been previously litigated or waived. *See* 42 Pa.C.S.A. § 9543(a)(3). An allegation of error "is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S.A. § 9544(b).

*(Footnote Continued)* ─────────────

merit. *See Commonwealth v. Small*, 980 A.2d 549, 565 (Pa. 2009) (citing *United States v. Hart*, 693 F.2d 286, 287 n.1 (3d Cir. 1982)).

Further, counsel is presumed effective, and an appellant bears the burden to prove otherwise. **See Commonwealth v. McDermitt**, 66 A.3d 810, 813 (Pa. Super. 2013). The test for ineffective assistance of counsel is the same under both the Federal and Pennsylvania Constitutions. **See Strickland v. Washington**, 466 U.S. 668, 687 (1984); **Commonwealth v. Jones**, 815 A.2d 598, 611 (Pa. 2002). An appellant must demonstrate that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different. **See Commonwealth v. Pierce**, 786 A.2d 203, 213 (Pa. 2001), *abrogated on other grounds by* **Commonwealth v. Grant**, 813 A.2d 726 (Pa. 2002). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." **Jones**, *supra* at 611 (citation omitted).

In the first claim, Appellant argues that trial counsel was ineffective for failing to discuss the case with him fully. (**See** Appellant's Brief, at 9-12). When questioned about this claim at the PCRA hearing, Appellant initially appeared confused, complaining that **appellate** counsel failed to follow up with him after the submission of his direct appeal. (**See** N.T. PCRA Hearing, 9/29/14, at 5). After being prompted by PCRA counsel, Appellant testified that trial counsel had met with him prior to trial and explained things to him but that he did not feel "it was enough time to prepare for it." (**Id.** at 6).

He elucidated further that he did not feel he had enough time to speak with counsel. (*See id.*). However, on cross-examination, Appellant admitted that trial counsel answered any questions he had during their meetings, met with both Appellant and his family members after his release from prison, and that he had been able to communicate with trial counsel through letters during his period of incarceration. (*See id.* at 14-18).

Appellant's argument on this issue is undeveloped. After citing some boilerplate on the general standards for ineffective assistance of counsel claims, Appellant quotes the above-cited testimony and ends with two conclusory paragraphs stating that he received ineffective assistance of trial counsel because trial counsel did not properly communicate with him. (*See* Appellant's Brief, at 9-12). At no point does Appellant specify what further communication was necessary, what trial counsel failed to explain to him, or how trial counsel's alleged failure to communicate with him prejudiced him. Thus, Appellant has failed to set forth the ineffectiveness analysis required by *Strickland*. *See Strickland*, *supra* at 687. Because Appellant has not established any of the three prongs, we must deem counsel's assistance constitutionally effective. *See Commonwealth v. Rolan*, 964 A.2d 398, 406 (Pa. Super. 2008) (holding that where appellant fails to address three prongs of ineffectiveness test, he does not meet his burden of proving ineffective assistance of counsel, and counsel is deemed constitutionally

effective). Thus, there is no basis to upset the PCRA court's finding that Appellant was not entitled to PCRA relief on this basis.[2]

In the second claim, Appellant avers that trial counsel was ineffective for failing to file any pretrial motions. (**See** Appellant's Brief, at 12-13). Appellant's argument suffers from the same fatal flaws as his first claim. At the PCRA hearing, when asked what pretrial motions he believed trial counsel should have filed, Appellant replied, "I honestly don't know." (N.T. PCRA Hearing, 9/29/14, at 6). In his brief, Appellant also fails to identify any pretrial motions that trial counsel should have filed and fails to explain how the failure to file pretrial motions prejudiced him. Claims of ineffective

_____

[2] Moreover, Appellant's claim is without merit. The record reflects that the PCRA court credited trial counsel's testimony that he met with both Appellant and his family on multiple occasions and spoke with Appellant's relatives on the telephone. (**See** PCRA Ct. Op., at 10). As the PCRA court aptly stated:

> [Appellant] was unable to give any specifics as to what [t]rial [c]ounsel could have accomplished or how the outcome of his case would have been different had he and [t]rial [c]ounsel had more meetings and/or discussions about the case or if [t]rial [c]ounsel had more time to prepare for trial. He has failed to identify any issues or questions which were not addressed by [t]rial [c]ounsel. In fact, he testified that he felt that all of his questions had been answered satisfactorily after the meeting with [t]rial [c]ounsel and [Appellant's] family members. Thus, [Appellant] has failed to point to any prejudice he suffered in this regard. . . .

(**Id.** at 11). Because Appellant failed to show that he suffered any prejudice as a result of trial counsel's alleged failure to communicate, the PCRA court was correct to deny relief on this basis. **See Jones**, **supra** at 611; **Pierce**, **supra** at 213.

- 10 -

assistance of counsel based on mere speculation are not sufficient to demonstrate the necessary degree of prejudice. ***See Commonwealth v. Pursell***, 724 A.2d 293, 311 (Pa. 1999), *cert. denied*, 528 U.S. 975 (1999). Further, because Appellant has not established any of the three prongs, we must deem counsel's assistance constitutionally effective. ***See Rolan***, ***supra*** at 406. Thus, there is no basis to upset the PCRA court's finding that Appellant was not entitled to PCRA relief on this basis.

In the third claim, Appellant argues trial counsel was ineffective for failing to adequately cross-examine the victim. (***See*** Appellant's Brief, at 13-15). Specifically, Appellant faults counsel for not cross-examining the victim on the inconsistencies in her various statements regarding the incident. (***See id.***). We disagree.

A criminal defendant has the constitutional right to confront witnesses against him; this right includes the right of cross-examination. ***See Commonwealth v. Buksa***, 655 A.2d 576, 579 (Pa. Super. 1995), *appeal denied*, 664 A.2d 972 (Pa. 1995). Cross-examination can be used to test a witness' version of the events, to impeach her credibility, or to establish her motive for testifying. ***See id.*** Lastly, it is well settled that the scope and vigor of any particular cross-examination is a matter of trial strategy that is left to the sound discretion of counsel. ***See Commonwealth v. Molina***, 516 A.2d 752, 757 (Pa. Super. 1986).

Here, the record belies Appellant's claim. As the PCRA court stated:

Trial [c]ounsel . . . brought out the fact that [the victim] and [Appellant] had previously lived together and that she had given him the code to get into her apartment. He also brought up [the victim's] romantic relationship with another man at the time of the incident and her fear that her sexual encounter with [Appellant] would have a detrimental effect on that relationship. He raised [the victim's] failure to report the incident to police or the Turkey Hill [c]lerk despite having the opportunity to do so. Trial [c]ounsel fully questioned [the victim] about her statements made on January 12, 2012, and several other inconsistent statements she had allegedly made to other individuals.

\* \* \*

Clearly, the jury accepted [the victim's] explanations and found her to be a credible witness. Trial [c]ounsel conducted a thorough and effective cross-examination of [the victim] and [the PCRA court] can see nothing further that he could have asked which could have aided [Appellant]. [The PCRA court] believe[s] [t]rial [c]ounsel raised every[thing] possible concerning [the victim's] veracity and took every possible opportunity to raise a question as to [the victim's] truthfulness in the minds of the jurors.

(PCRA Ct. Op., at 12-13).

Our independent review of the record confirms the PCRA court's description of trial counsel's cross-examination of the victim. (**See** N.T. Trial, 4/12/12, at 32-48). The record supports the finding that the cross-examination was consistent with a reasonable trial strategy and was designed with Appellant's best interest in mind. Counsel was not ineffective for failing to cross-examine the victim properly. Thus, there is no basis to upset the PCRA court's finding that Appellant was not entitled to PCRA relief on this basis.

In the fourth claim, Appellant argues that trial counsel was ineffective for failing to object to the Commonwealth's request for a continuance when the victim recanted her prior statements. (*See* Appellant's Brief, at 15-17). We disagree.

As discussed above, on January 12, 2012, the police brought the victim to the trial court after she failed to respond to a subpoena. At an *in-camera* hearing, she recanted her earlier statements to the police, stating that she loved Appellant, did not wish to testify, and the incident in July 2011 was consensual. (*See* N.T. Hearing, 1/12/12, at 3-5). After her statements, the parties agreed that her recantation might implicate Fifth Amendment issues as she was essentially admitting to lying to the police and filing a false report. (*See id.* at 5-8). At the PCRA hearing, trial counsel testified that he would have liked to proceed that day but that the trial court felt a continuance was necessary because of Fifth Amendment concerns. (*See* N.T. PCRA Hearing, 9/29/14, at 24).

Initially, we note that Appellant's argument again consists of boilerplate references to *Strickland*, with absolutely no attempt to explain why an objection in this case would have been meritorious. (*See* Appellant's Brief, at 17). Here, the victim recanted her previous testimony; our review of the record demonstrates that she had no understanding of the possible consequences of her actions. (*See* N.T. Hearing, 1/12/12, at 3-8).

In **Commonwealth v. Nelson**, 574 A.2d 1107 (Pa. Super. 1990), Nelson, while pleading guilty to murder and related charges, implicated another individual, one Thomas Eaton, in the crime. **See Nelson**, **supra** at 1109. He subsequently recanted his accusations. **See id.** Despite this, the Commonwealth subpoenaed him to testify at Eaton's trial. **See id.** The recantation and subsequent testimony resulted in Nelson being charged with, and ultimately pleading guilty to, perjury and related offenses. **See id.** This Court found Nelson's testimony to be constitutionally infirm, specifically noting that Nelson was not represented by counsel, not advised of his right against self-incrimination, and did not understand the possible consequences of his testimony. **See id.** at 1111-13.

As **Nelson** suggests, once the victim recanted her testimony and opened herself to possible criminal charges, the only means to protect her constitutional rights was to do exactly what the trial court did, appoint counsel and continue the matter. An objection to the continuance would have been pointless. We will not find counsel ineffective for failing to make a non-meritorious objection. **See Commonwealth v. Floyd**, 484 A.2d 365, 368 (Pa. 1984). Thus, there is no basis to upset the PCRA court's finding that Appellant was not entitled to PCRA relief on this basis.

In the fifth claim, Appellant argues that trial counsel was ineffective for "abandoning" him after trial. (Appellant's Brief, at 17). We disagree.

To the extent that it can be determined from the incoherent argument on this matter, Appellant appears to be claiming that trial counsel was ineffective for withdrawing following trial because this necessitated the appointment of new counsel who was unfamiliar with the case, resulting in Appellant receiving ineffective assistance of sentencing counsel. (***See id.***). Again, we note that this claim is completely undeveloped. Appellant points to nothing in the certified record or notes of testimony from the PCRA hearing that would suggest that there was anything improper with respect to trial counsel's withdrawal. (***See id.***).[3] Thus, he has not demonstrated that the underlying claim has any arguable merit. ***See Jones***, ***supra*** at 611; ***Pierce***, ***supra*** at 213. Therefore, there is no basis to upset the PCRA court's finding that Appellant was not entitled to PCRA relief on this basis.

In the sixth claim, Appellant argues that sentencing counsel was ineffective for failing to raise mitigating factors during sentencing. (***See*** Appellant's Brief, at 19-22). Again, aside from some boilerplate law and a lengthy quotation from the PCRA hearing, Appellant's argument on this issue consists of a single, conclusory paragraph. (***See id.***).

_____

[3] The certified record does not contain an application to withdraw. As noted above, the order permitting counsel to withdraw tersely stated that he "was unable to perform his duty." (Order of Court, 6/14/12, at 1). At the PCRA hearing, Appellant did not question trial counsel about his withdrawal. (***See*** N.T. PCRA Hearing, 9/29/14, at 26-28).

- 15 -

Moreover, at the PCRA hearing, Appellant stated that he "was not all right up in the head" and that he had "anger, depression[,]" used to take medication, and had been in residential treatment. (N.T. PCRA Hearing, 9/29/14, at 20-21). However, Appellant has failed to provide any medical evidence that, at the time of the incident and/or at trial, he suffered from any mental health issues, was taking medication, or was being treated for mental health problems.[4] At the PCRA hearing, trial counsel testified that Appellant never behaved in a manner that demonstrated any mental health problems and, while Appellant informed him of his juvenile mental health problems, he did not state that he had any recent diagnosis or other current issues. (*See id.* at 27-28). Sentencing counsel agreed that Appellant never behaved in a manner that demonstrated any mental health problems and never informed him of any mental health issues. (*See id.* at 32-33).

We will not fault counsel for not bringing up mitigating circumstances of which Appellant failed to inform him. Further, Appellant did not point to any evidence to demonstrate that he had any current mental health issues

_____

[4] We note that the Sexual Offenders Assessment discussed the exact same juvenile mental health history detailed by Appellant at the PCRA hearing. (*See* Sexual Offenders Assessment, 6/06/12, at 3-4). While the PSI is not contained within the certified record, the Sexual Offenders Assessment cites it as the source for its information on Appellant's juvenile history. (*See id.* at 3). At sentencing, the trial court stated that it had reviewed both the PSI and the Sexual Offenders Assessment. (*See* N.T. Sentencing, 10/24/12, at 21, 28). Thus, at the time of sentencing, the trial court had information about Appellant's prior mental health issues.

that constituted a mitigating circumstance. Also, as noted above, the sentencing court had the benefit of a PSI, which discussed Appellant's juvenile mental health history. We have stated, "Where the sentencing court had the benefit of a presentence investigation report [PSI], we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010) (some internal quotation marks and citations omitted). Lastly, Appellant has failed to demonstrate that he suffered any prejudice because of sentencing counsel's failure to highlight his mental health issues, therefore his claim must fail. *See Jones*, *supra* at 611; *Pierce*, *supra* at 213. Thus, there is no basis to upset the PCRA court's finding that Appellant was not entitled to PCRA relief on this basis.

In the seventh claim, Appellant alleges that counsel was ineffective for failing to file a post-sentence brief. (*See* Appellant's Brief, at 22-24). This claim is meritless.

Initially, we note that all of the cases cited by Appellant in support of this claim concern the ineffective assistance of counsel on direct appeal, not the failure of counsel to file a brief in support of a post-sentence motion. (*See id.* at 22-23). In fact, Appellant's argument never discusses the failure to file a brief in support of a post-sentence motion, containing solely a conclusory discussion on ineffective assistance of appellate counsel. (*See*

*id.* at 22-24). Moreover, Appellant utterly fails to explain how counsel's failure to file a brief prejudiced him. (*See id.*). Therefore, Appellant has not demonstrated that he is entitled to relief. *See Rolan*, *supra* at 406; *Pursell*, *supra* at 311. Thus, there is no basis to upset the PCRA court's finding that Appellant was not entitled to PCRA relief on this basis.

In the final claim, Appellant argues that he received ineffective assistance of appellate counsel, because counsel filed a late brief on direct appeal. (*See* Appellant's Brief, at 24-25). We disagree.

Appellant is correct that the appellate docket reflects that counsel did file a late brief. (*See* Appeal Docket Sheet, 10/20/15, at 3). However, this Court did not find waiver but rather decided Appellant's appeal on the merits. (*See Hollinger*, *supra* *1-*7 (Pa. Super. filed June 6, 2014)). Accordingly, Appellant has not shown that the filing of a late brief prejudiced him and, therefore, his claim must fail. *See Jones*, *supra* at 611; *Pierce*, *supra* at 213. Thus, there is no basis to upset the PCRA court's finding that Appellant was not entitled to PCRA relief on this basis.

Accordingly, for the reasons discussed above we find that PCRA court's determination is supported by the evidence of record and is free of legal error. *See Ousley*, *supra* at 1242. Therefore, we affirm the denial of Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/17/2015</u>