443 A.2d 1142

**COMMONWEALTH of Pennsylvania**

v.

**Rodney EVERETT, Appellant.**

Superior Court of Pennsylvania.

Submitted March 10, 1981.

Filed April 2, 1982.

Petition for Allowance of Appeal Denied Aug. 13, 1982.

William P. James, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before HESTER, ROWLEY and MONTGOMERY, JJ.

HESTER, Judge:

The appellant, Rodney Everett, a/k/a Clifford Frazier, was tried before a jury in Philadelphia on charges of robbery, criminal conspiracy, possession of an instrument of a crime and of a prohibited offensive weapon for two separate incidents. A guilty verdict on all Bills of Indictment was returned on June 11, 1975 and again on June 19, 1975. On May 6, 1976, Motions for a New Trial and in Arrest of Judgment were denied and the appellant was then sentenced to 12 years probation for one robbery conviction; 6 to 12 years for the other robbery conviction; separate 3½ to 7 year terms for each conspiracy conviction; 2½ to 5 years for possession of an instrument of a crime and 2½ to 5 years for possessing a prohibited offensive weapon. On August 13, 1980, a petition for relief under the Post Conviction Hearing Act was granted to the extent of permitting appellant to petition the Pennsylvania Superior Court for the right to appeal, nunc pro tunc, from the judgment of sentence. The petition was denied in all other respects. This appeal from the verdicts, entered June 11, 1975 and June 19, 1975, was filed September 2, 1980.

The appellant's long and well-prepared brief began with the assertion that the handgun used by the appellant's codefendant in the robbery of Mrs. Koch (hereinafter "first trial") was not an offensive weapon as defined in Section 908 of 18 Pa.C.S.A. We agree. The offense set forth in Section 908(a) is defined as follows:

A person commits a misdemeanor of the first degree if, except as authorized by law, he makes repairs, sells, or otherwise deals in, uses, or possesses any offensive weapons.

The term "offensive weapon" is further defined in Section 908(c): . . . any bomb, grenade, machine gun, sawed-off shotgun, firearm specially made or specially adapted for concealment or silent discharge, any blackjack, sandbag, metal knuckles, dagger, knife, razor or cutting instrument,

326

the blade of which is exposed in an automatic way by switch, push-button, spring mechanism, or otherwise, or other implement for the infliction of serious bodily injury which serves no common lawful purpose.

The handgun used by the appellant's co-defendant is not specifically enumerated in Section 908(c); nor is it properly labelled an "other instrument for the infliction of serious bodily injury." The purpose of Section 908 is to preclude the use of weapons which can serve no purpose other than to serve some criminal design. *Commonwealth v. McHarris*, 246 Pa.Super. 488, 371 A.2d 941 (1977). Certainly, the intent of the Pennsylvania legislature in enacting Section 908 was not to deny police officers and registered hunters the means to serve their lawful, necessary and recreational purposes. Consequently, we reverse the guilty verdict returned on the bill for possession of a prohibited offensive weapon.

The appellant proceeds with his contention that the evidence introduced at the first trial was insufficient to prove the remaining charges. Of course, it is well-established that upon review of the sufficiency of the evidence to sustain a verdict, all reasonable inferences are drawn favorable to the Commonwealth. *Commonwealth v. Roux*, 465 Pa. 482, 350 A.2d 867 (1976); *Commonwealth v. Whitfield*, 474 Pa. 27, 376 A.2d 617 (1977). Pursuant to this guideline, we find the incidents and circumstances to have unfolded as follows:

On May 16, 1974, Mrs. Etta Koch, was operating her grocery store in Philadelphia when a teenager approached her counter and, held a pistol to her head and demanded the cash from the cash register. At that moment, the appellant ran into the store, jumped over the counter and demanded the rest of the money. When told that there was no more money, the appellant grabbed a pack of cigarettes and fled the scene with his co-defendant. After the robbery, both men were seen running together until they turned the corner and were out of sight.

Appellant does not deny the commission of a robbery; however, he argues that the robbery conviction be

reversed because at no time during the robbery did he carry a weapon, employ threats or cause personal injury. The appellant is correct in his assessment of his actions during the actual robbery; however, the criminal acts of his co-defendant were properly imputed to him through use of the vicarious liability doctrine. Section 306 of the Pennsylvania Crimes Code imputes criminal responsibility to anyone who aids, agrees or attempts to aid a person in the planning or commission of a crime, providing such aid, agreement or attempt is done with the purpose of furthering the criminal design. Mere presence at the scene and knowledge of the commission of criminal acts is not enough to find one vicariously liable under Section 306. *Commonwealth v. Henderson*, 249 Pa.Super. 472, 378 A.2d 393 (1977). One person may be the actual perpetrator of the crime; however, another person is equally criminally liable if he aids that person with the intent of promoting that person's act. *Commonwealth v. Bridges*, 475 Pa. 535, 381 A.2d 125 (1977).

It was more than coincidental that the appellant happened to jump the counter, demand the rest of the money and then settle for a pack of cigarettes immediately after the co-defendant held the victim at gunpoint and demanded money from the cash register. It was likewise far from coincidental that the appellant and co-defendant were seen fleeing the scene of the robbery side by side. There is enough evidence, then, for the jury to find that the appellant intended to facilitate the co-defendant's act, that the appellant aided and abetted him and; consequently, that the appellant committed robbery.

Appellant advances the same argument in support of a reversal of the conspiracy conviction. He contends that nothing more than mere suspicion could be inferred from his presence at the scene and; therefore, that inference was not enough to sustain a guilty verdict on conspiracy. The crime of conspiracy is complete the moment two or more parties agree to perform some unlawful act. An explicit agreement can seldom be proved; nevertheless, that does not preclude a conspiracy conviction. *Commonwealth v. Neff*, 407 Pa. 1,

179 A.2d 630 (1962); *Commonwealth v. Dolfi*, 483 Pa. 266, 396 A.2d 635 (1979). The evidence here is more than mere conjecture or surmise. The appellant waited outside while the co-defendant robbed the victim and then took advantage of the restraint placed on Mrs. Koch by his gun-wielding partner by demanding the balance of cash. We find that a conspiratorial agreement can be reasonably deduced from these facts.

According to the appellant, the commission of several trial errors at both trials warrant the granting of a new trial. First, he maintains that it was error to refuse the appellant's request that prospective jurors be asked where they resided. Secondly, he argues that error occurred when the trial judge refused to instruct the jury that a witness may be impeached by a prior inconsistent statement. Finally, it allegedly was error to refuse to instruct the jury that identification testimony must be viewed with caution where it is impeached or contradicted.

■ To conduct a voir dire on place of residence was unnecessary and improper. It was the mandatory practice to select prospective jurors from Philadelphia County; consequently, it was reasonable to assume that the entire panel resided in that county. Moreover, the judge asked the jurors whether they had any prejudice, bias or hostility for the appellant or people of his race. We agree with the Commonwealth that the appellant was trying to engage in a fishing expedition for facts for utilizing his peremptory challenges more effectively. Voir dire is not conducted for that purpose. *Commonwealth v. Lopinson*, 427 Pa. 284, 234 A.2d 552 (1967).

■ We will not grant a new trial because of the trial judge's refusal to instruct the jury that a witness may be impeached by a prior inconsistent statement. Unlike *Commonwealth v. Kramer*, 474 Pa. 341, 378 A.2d 824 (1977), the opinion cited by the appellant, the witness here made no prior inconsistent statements.

 Appellant finally alleges that it was trial error at his second trial (robbery of Mr. Leon) to refuse to include a cautionary instruction since Mr. Leon had expressed doubt on prior occasions as to the true identification of the appellant. Appellant also asserts that the identification was tainted because Mr. Leon could not recall the appearance of the presiding judge, the public defender and district attorney at the preliminary hearing, yet he could recall the appellant's appearance. Also, it was allegedly tainted by the significant lapse of time between the incident and the courtroom identification.

We find no evidence that the identification given to the police shortly following the incident was vague or inconsistent with the in-court identification. Secondly, we are not convinced that the failure to remember the appearance of peripherally involved individuals lessens the magnitude of the identification of the appellant. Mr. Leon knew that mannerisms and appearance of those individuals were not pertinent. We find no facts that mandate a cautionary instruction on identification testimony.

 The appellant proceeds to cite numerous errors committed by trial counsel at both trials, several will be addressed here. If the course, which counsel is accused of failing to pursue had some reasonable basis, then he cannot be found ineffective. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). An attorney cannot be deemed ineffective for refusing to act on frivolous matters. *Commonwealth v. Nero*, 250 Pa.Super. 17, 378 A.2d 430 (1977).

 Trial counsel for the defense was allegedly ineffective for failing to request a cautionary instruction or a mistrial when Mrs. Koch referred to photographs shown to her by the police. *Commonwealth v. Allen*, 448 Pa. 177, 292 A.2d 373 (1972) settled the law on the issue of the propriety of a witness' reference to police photographs:

The suggestion that any reference to a defendant's photograph is so prejudicial that an inflexible rule of reversal

must apply is explicitly rejected. We hold that after the reference to a photograph the controlling question is whether or not a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity. A mere passing inference to photographs from which a reasonable inference of prior criminal activity cannot properly be drawn does not invalidate the proceedings since there has been no prejudice as a result of the reference .... *Id.*, 448 Pa. 181, 292 A.2d at 375.

The *Allen*, supra, decision found that the use of such photographs was prejudicial because they predisposed the juror's minds to find the defendant guilty. The photographs in *Allen*, supra, were used by the prosecution on five separate occasions on direct examination, whereas the photographs here were used only when Mrs. Koch testified. Such infrequent use, then, excludes this case from the law of *Allen*, supra. Furthermore, we find that any use of the photographs at trial was inconsequential because Mrs. Koch had identified the appellant at the scene and later at the time of trial. *Commonwealth v. Jackson*, 263 Pa.Super. 183, 397 A.2d 807 (1979).

References made by the District Attorney and the Court before the jury concerning the appellant's failure to testify at the first trial were, according to the appellant, violations of constitutional safeguards and his trial counsel, therefore, was ineffective for not objecting at trial. The mere mention of the defendant's decision not to testify or present evidence on his own behalf does not constitute error; the remark must go further by implying that the defendant has a duty to testify. *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 820 (1954). The remarks made by the trial judge and district attorney neither explicitly nor implicitly stated that the appellant had a duty to testify or present evidence on his own behalf.

Appellant maintains next that his trial counsel at the first trial was ineffective for failing to object to the court's instruction which discussed repealed law and which suppos-

edly led the jury to an understanding that appellant's mere presence at the scene of the crime was enough to find him vicariously liable for the acts of his co-defendant. We do agree that the trial judge relied upon repealed law when he referred to principals of the first and second degree; however, that was a misnomer that had no adverse effect on the trial's outcome. That misnomer did not impair the remaining portion of the instruction which accurately described the degree of involvement necessary before finding one vicariously liable for the criminal acts of another. We do not agree that the court instructed the jury that mere presence at the scene is sufficient for a guilty verdict; the appellant himself admits that a particular portion of the instruction refers to one who "aids and abets in the commission" as well as one who is present at the scene. The court proceeded to define an aider and abettor as an "active partner in the intent". These instructions satisfy the requirement that something more than mere presence and conjecture is needed before finding one guilty under the theory of vicarious liability.

 The appellant raises the issue of whether trial counsel at the second trial was ineffective for failing to file post verdict motions for the trial judge's refusal to grant a one-day continuance in order to secure the presence of a defense witness. A kindred issue is whether trial counsel was ineffective for not interviewing a certain defense witness in time for trial. Yielding to the principals advanced by *Maroney*, supra, and *Nero*, supra, we find that trial counsel's failure to secure the defense witness had a reasonable basis, and his filing of post trial motions because the court refused to grant a continuance would have been frivolous and fruitless. Appellant does not propose any reasonable basis for believing that the co-defendant's testimony would aid the appellant. Where there is no reason to believe that the uncalled witness' testimony could benefit the defendant, a new trial is inappropriate despite the fact that trial counsel had not interviewed such a witness. *Commonwealth v. Barren*, 273 Pa.Super. 492, 417 A.2d 1156 (1980).

Furthermore, trial counsel had a reasonable basis for not interviewing the co-defendant because there appears to be no evidence that trial counsel was informed prior to trial that the co-defendant could offer exculpatory testimony.

We reverse the guilty verdict on the possession of a prohibited offensive weapon; we affirm in all other respects.