541 A.2d 315

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Kenneth Richard DAVIS, Appellant.**

Supreme Court of Pennsylvania.

Argued March 11, 1988.

Decided May 20, 1988.

Lester G. Nauhaus, Public Defender, John H. Corbett, Jr., Chief–Appellate Div., Mitchell A. Kaufman, Appellate Counsel, Robert W. Beckwith, Office of the Public Defender, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Deputy Dist. Atty., Sandra Preuhs, Asst. Dist. Atty., Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from an order of the Superior Court affirming the judgment of sentence entered in the Court of Common Pleas of Allegheny County on July 12, 1985, following the conviction of appellant, Kenneth Richard Davis, for numerous sex offenses allegedly committed against an eleven-year-old boy. The appellant claims his trial counsel was ineffective for failing to object to expert testimony presented by the Commonwealth regarding the credibility of sexually abused children. We agree, reverse the order of Superior Court, and remand for a new trial.

During a period of four or five months in late 1983 and ending on January 29, 1984, the appellant entertained the eleven-year-old son of a friend on approximately six occasions. Following the last visit, the boy told Linda Kelley, a mutual friend of his mother and the appellant, that the appellant had asked him to sleep with him. Ms. Kelley informed the boy's mother and police officials. Based on the boy's detailed account of the appellant's actions, he was charged with involuntary deviate sexual intercourse, corruption of a minor, indecent assault, criminal attempt, and simple assault.

The boy, twelve years old at the time of the trial, testified that on six visits, the appellant engaged in conduct which would constitute the offenses charged. The Commonwealth bolstered his testimony with that of Anthony Mannarino, a clinical child psychologist who was an expert in the treatment of child sexual abuse. He had never examined the victim, but testified that "children who have not been involved in sexual experiences typically do not fantasize about sexual experiences." On cross-examination, he elaborated: "My experience with children who have had some type of sexual experiences when they report about it, typically it is based upon some event that actually occurred and not some fantasized or fabricated experience." The jury found the appellant guilty of all charges.

Immediately after the trial, the appellant qualified to proceed in forma pauperis, and his privately-retained trial counsel was succeeded by present counsel, the Public Defender of Allegheny County. The public defender filed timely post-verdict motions, alleging, inter alia, that trial counsel was ineffective for failing to object to the testimony of the Commonwealth's expert, Anthony Mannarino. *See Commonwealth v. Hubbard*, 472 Pa. 259, 276–77 n. 6, 372 A.2d 687, 695 n. 6 (1977). Following a hearing and the denial of post-verdict motions, the appellant was sentenced on July 12, 1985. Due to the youth of the victim, the appellant received a mandatory five to ten year sentence for involuntary deviate sexual intercourse pursuant to 42 Pa.

C.S. § 9718, with concurrent or suspended sentences for the remaining convictions.

On appeal, the Superior Court affirmed the appellant's judgment of sentence, rejecting his allegations of ineffective assistance of trial counsel, 359 Pa.Super. 626, 515 A.2d 617. The court relied primarily on its decision in *Commonwealth v. Baldwin*, 348 Pa.Super. 368, 502 A.2d 253 (1985).[1] *Baldwin* permitted a CYS social worker "to explain the dynamics of intra-family sexual abuse and the behavior patterns of the victims." *Id.*, 348 Pa.Superior Ct. at 373, 502 A.2d at 255. Although Baldwin argued that the expert "effectively testified that the victim was a credible witness, thereby usurping the jury's credibility-determining function ... ," *id.*, the court held that "the testimony of a properly qualified expert concerning the psychological dynamics of incest and the behavioral patterns of incest victims is admissible...." *Id.*, 348 Pa.Superior Ct. at 373, 502 A.2d at 255–56. The *Baldwin* court based its holding on the fact that the expert did not "expressly comment on the victim's credibility," and the finding that "the reactions and behavior of a victim of incest are not matters of common knowledge and experience." *Id.*, 348 Pa.Superior Ct. at 376–77, 502 A.2d at 257–58. Superior Court therefore reasoned that Anthony Mannarino's testimony was admissible in this case.

Subsequent to the *Baldwin* decision, this Court decided *Commonwealth v. Seese*, 512 Pa. 439, 517 A.2d 920 (1986). The *Seese* decision unequivocally prohibited testimony such as that rendered by Mannarino in this case. The expert in *Seese* testified as follows:

It is very unusual that a child would lie about sexual abuse.... [P]repubertal children usually do not lie about matters of sexual abuse no matter how chaotic or uncomfortable their home situation is, one, because they don't know how to lie about it. They don't know what to say. It's not part of the life experience, so everything they say

1. In accordance with the following discussion, *Baldwin* is disapproved insofar as it conflicts with *Commonwealth v. Seese*, 512 Pa. 439, 517 A.2d 920 (1986), and this opinion.

is something they have seen or experienced. It would be very unusual for them to lie.

*Id.*, 512 Pa. at 441–42, 517 A.2d at 921. We summarized the expert's testimony in *Seese* by stating that:

the essence of [the expert's] response was that, based upon her own experience, young children usually do not fabricate stories of sexual abuse because they do not have sexual knowledge sufficient to supply details regarding sexual encounters. Thus, the testimony consisted of expert opinion as to the veracity of the class of potential witnesses of which the victim was a member.

*Id.* We noted that the veracity of a particular witness is a question which must be answered in reliance on the ordinary experiences of life, common knowledge of the natural tendencies of human nature, and observations of the character and demeanor of the witness. As the phenomenon of lying is within the ordinary capacity of jurors to assess, the question of a witness's credibility is reserved exclusively for the jury. We relied upon *Commonwealth v. Shaver*, 501 Pa. 167, 460 A.2d 742 (1983); *Commonwealth v. O'Searo*, 466 Pa. 224, 352 A.2d 30 (1976); and *Danovitz v. Portnoy*, 399 Pa. 599, 161 A.2d 146 (1960). The quoted testimony in *Seese* was condemned as "an invitation for the trier of fact to abdicate its responsibility to ascertain the facts relying upon the questionable premise that the expert is in a better position to make such a judgment," quoting *O'Searo, supra*. *Seese*, 512 Pa. at 443–44, 517 A.2d at 922. We concluded:

Such testimony, admitted as evidence, would encourage jurors to shift their focus from determining the credibility of the *particular* witness who testified at trial, allowing them instead to defer to the so-called "expert" assessment of the truthfulness of the class of people of which the particular witness is a member.

*Id.*

■ There is no question that the prohibition of *Seese* applies squarely to the testimony given by the Commonwealth expert in this case. It, too, was an " 'expert' assess-

ment of the truthfulness of the class of people of which the particular witness is a member"; indeed, Mannarino's testimony was virtually identical to that of the *Seese* expert. The issue is whether the appellant's trial counsel was ineffective for failing to object to the testimony even though the appellant's trial took place prior to our decision in *Seese*.

There are three elements to a valid claim of ineffective assistance. We inquire first whether the underlying claim is of arguable merit; that is, whether the disputed action or omission by counsel was of questionable legal soundness. If so, we ask whether counsel had any reasonable basis for the questionable action or omission which was designed to effectuate his client's interest. If he did, our inquiry ends. If not, the appellant will be granted relief if he also demonstrates that counsel's improper course of conduct worked to his prejudice, i.e., had an adverse effect upon the outcome of the proceedings. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Sullivan*, 472 Pa. 129, 371 A.2d 468 (1977); *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). Relevant to this case is the additional principle that counsel will not be deemed ineffective for failing to predict a change in the law. *Commonwealth v. White*, 515 Pa. 348, 528 A.2d 596 (1987); *Commonwealth v. Triplett*, 476 Pa. 83, 381 A.2d 877 (1977).

The appellant's trial took place on August 2 and 3, 1984, prior to the decision of this Court in *Commonwealth v. Seese, supra*. Trial counsel could not, therefore, rely on *Seese* to bolster an objection to the testimony of Anthony Mannarino. Nevertheless, *Seese* followed and applied the holdings of *Commonwealth v. Shaver, supra* (1983), *Commonwealth v. O'Searo, supra* (1976), and *Danovitz v. Portnoy, supra* (1960). Thus it was evident at least since 1960 that such testimony was objectionable. Moreover, counsel who was appointed immediately after the trial raised this precise objection in post-verdict motions, citing *Commonwealth v. Grant*, 479 Pa. 74, 387 A.2d 841 (1978); *Commonwealth v. Tirado*, 473 Pa. 468, 375 A.2d 336 (1977); as well

as *Commonwealth v. O'Searo, supra* (1976). Abundant case law existed at the time of trial in 1984 which would have supported an objection to the testimony of Mannarino. In briefing this issue on post-verdict motions, counsel relied on *O'Searo, supra,* to argue:

> The testimony serving only to buttress the credibility of [the alleged victim] was inadmissible, since to permit such testimony for such a purpose would be to invite the trier of fact (the jury) to abdicate its responsibility to ascertain the facts upon the premise that the expert was in the better position to make the judgment.

This is precisely what we prohibited in *Seese,* also citing *O'Searo.*

It is clear that in 1984, a valid objection could have been made to prevent the expert testimony of Anthony Mannarino. Short of prohibiting the testimony altogether, the appellant would undeniably have been entitled to a jury instruction known as a "low grade" charge which would have informed the jury that expert opinion evidence is considered of a low grade when the expert testifies not from personal observation but expresses an opinion in response to a hypothetical question. *Commonwealth v. Thomas,* 448 Pa. 42, 51, 292 A.2d 352, 357 (1972). The appellant's trial counsel failed to request such a charge, and newly appointed counsel alleged in post-verdict motions that the omission constituted ineffective assistance.

Both omissions satisfy the first element of a claim of ineffective assistance of counsel: that is, they constitute highly questionable legal judgment in conducting the defense. The second question is whether there was any reasonable basis for counsel's omissions. The appellant's trial counsel testified at the hearing on post-verdict motions. He justified his trial "strategy" as follows:

> Well, Dr. Mandarino [sic] didn't really—I felt in my estimation he hadn't hurt the defense case. He never did examine [the victim], and I felt that from his testimony it would appear to the jury that the Commonwealth was

groping for some type of backup on [the victim's] testimony, since there was no other.

It just appeared to me that Dr. Mandarino's [sic] testimony was not harmful in any way to the defendant.

. . . .

[Q] Did you also wish to question the doctor about when people began to become child molesters and when they began to start this kind of activity?

[A] Yes. There is a history of child molestation that begins when they are very, very young. And I wanted to elicit this from Dr. Mandarino [sic], and that Kenneth Richard Davis has never had any history of sexual abuse or molestation against him at any time in the past.

He was, I believe, 31 at the time when he went to trial, or something like that.

To accomplish the latter purpose, counsel had elicited the following testimony from Mannarino on cross-examination at trial:

[Q] [I]t would be against the norm in psychology for a man to start deviate behavior in the late twenties?

[A] No, I disagree. I think even though it is not uncommon for teen-agers to begin perpetrating sexual abuse during adolescence, it can begin at any age. I don't think there is any age range that qualifies.

[Q] You say the norm is in the teens?

[A] There is no norm. I just said it is not uncommon for a teen-ager to perpetrate sexual abuse. But it occurs among all age groups.

In view of the damaging nature of Mannarino's testimony, we see no reasonable basis for trial counsel's failure to object to the testimony or, at the very least, to request a "low grade" charge to soften its impact.

The final element required to establish the appellant's right to relief is a showing that the conduct prejudiced his right to a fair and impartial trial—that a different outcome might have resulted had counsel pursued a sound trial strategy. The evidence at trial consisted primarily of the alleged victim's testimony, the appellant's denial, and Man-

narino's opinion regarding the credibility of child sexual abuse victims. We are persuaded that the outcome of the trial might well have been different had the expert testimony been omitted as it should have been. The appellant is therefore entitled to a new trial.

The order of the Superior Court is reversed and the case is remanded for a new trial.

LARSEN, J., concurs in the result.