609 A.2d 1376

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Jackie Lee LONER, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 14, 1992.

Filed May 28, 1992.

Reargument Denied Aug. 3, 1992.

---

James N. Bryant, Millheim, for appellant.

Ray F. Gricar, Dist. Atty., Bellefonte, for Com., appellee.

Before McEWEN, POPOVICH and JOHNSON, JJ.

POPOVICH, Judge.

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Centre County, following appellant's conviction on three counts each of rape, incest, indecent assault, corruption of minors and statutory rape. The charges against appellant stemmed from the alleged sexual abuse of his eight year old daughter. Herein, appellant questions whether the trial court erred in admitting the testimony of a Cindy Miele, a Children & Youth Services caseworker, concerning the use of anatomically correct dolls during the initial interview of the child-victim. Since we are convinced the testimony of the CYS caseworker impermissibly infringed upon the jury's function of ascer-

taining the credibility of the victim, we reverse and remand for a new trial.[1]

Appellant argues that the trial court erred in allowing, over objection, the direct testimony of CYS caseworker Cindy Miele. Specifically, appellant argues that the testimony concerning the victim's use of anatomically correct dolls was equivalent to a "polyester polygraph," used solely for the purpose of ascertaining the validity of the victim's allegations. Further, appellant asserts the Ms. Miele's testimony impermissibly bolstered the credibility of the victim, thereby, invading the exclusive province of the jury.

The record reveals that Ms. Miele was the caseworker from CYS who investigated the victim's allegations of sexual abuse. She testified that the purpose of her initial interview with the victim was "to determine whether or not the report that was received from our office was an accurate report. *Whether there was any truth to the matter that Mr. Loner had sexually abused [the victim]*." Trial Transcript, p. 102 (emphasis added). Subsequently, Ms. Miele again stated that during her interview, she "was attempting to *validate* [the victim's] report." Trial Transcript, p. 106 (emphasis added). While attempting to "validate" the report, Ms. Miele provided the victim with anatomically correct dolls so that the child could demonstrate the alleged sexual acts with the dolls. Trial Transcript, p. 107. After describing the anatomically correct dolls and their investigatory function, Ms. Miele testified that the victim used the dolls in a manner "consistent" with her prior oral statement. Trial Transcript, p. 108.

Ms. Miele further testified that following her interview with the victim, she "determined that it would not be safe

---

1. Appellant also questions: Whether the trial court erred in permitting the Commonwealth to introduce the testimony of a registered nurse and a physician regarding the physical examination of the victim, and whether the trial court erred in permitting the Commonwealth to present testimony regarding statements made by appellant to a state trooper during the investigation. We do not reach these issues on their merits due to our resolution of appellant's first allegation of error.

for [the victim] to return to her parents' home." Trial Transcript, p. 110. Significantly, Ms. Miele specifically testified that she told Mrs. Loner and her mother-in-law that "I *believed* the victim's statements and accordingly had placed her in foster care until the legal work was completed." Trial Transcript, p. 110 (emphasis added).

■■■ The law is clear that the determination of the veracity of a witness is reserved exclusively for the jury. *Commonwealth v. Seese*, 512 Pa. 439, 517 A.2d 920 (1986); *Commonwealth v. Davis*, 518 Pa. 77, 541 A.2d 315 (1988); *Commonwealth v. Gallagher*, 519 Pa. 291, 547 A.2d 355 (1988). As such, testimony, especially that of an expert, which serves to bolster the veracity of a child sexual abuse victim impermissibly infringes upon the province of the jury. *Seese, supra; Commonwealth v. Garcia*, 403 Pa.Super. 280, 588 A.2d 951 (1991). Accordingly, we must determine the purpose for which Cindy Miele's testimony was offered.[2]

■■ We are convinced that Ms. Miele's testimony was offered to "bolster the veracity" of the victim and, therefore, impermissibly infringed upon the jury's function of assessing the victim's credibility. Ms. Miele testified that her function was to determine whether there was any "truth" to the report of sexual abuse and to "validate" the report. She testified that the child's oral recitation of the abuse was consistent with her use of the dolls. Most importantly, Ms. Miele specifically testified that after her initial investigation was complete, she "believed" the victim. We find that the Commonwealth should not be permitted to present testimony which so clearly usurps the jury's function by allowing them to defer to Ms. Miele's assessment of the victim's allegations.

This is not merely a case where the Commonwealth presented evidence of the child-victim's prior consistent statement in order to corroborate the victim's testimony.

2. Ms. Miele testified that she had undergone specialized training in the area of interviewing and working with child-victims of abuse. Trial Transcript, p. 102.

See *Commonwealth v. Willis*, 380 Pa.Super. 555, 552 A.2d 682 (1988) (even unimpeached testimony of a child-victim may be corroborated by prior consistent statement); *Commonwealth v. Stohr*, 361 Pa.Super. 293, 522 A.2d 589 (1987). Rather, through Ms. Miele's testimony, the Commonwealth entered into evidence not only the victim's prior consistent statement (and consistent use of the anatomically correct dolls) but also presented the CYS caseworker's personal assessment of the truth of those statements. Simply, Ms. Miele's testimony that she *believed* the victim should not have been allowed. Accordingly, we reverse the decision below and remand this case for a new trial.

Judgment of sentence reversed. Case remanded for a new trial. Jurisdiction relinquished.

JOHNSON, J., files a dissenting opinion.

JOHNSON, Judge, dissenting:

I must respectfully dissent. Upon careful review of the record, I find the issue addressed by the majority to have been waived. In the alternative, under the circumstances of this case, I find no merit in Loner's contention that Ms. Miele's testimony was inadmissible. I am also compelled to note that the thrust of the majority's opinion depends upon portions of the record which are not challenged by Loner. Accordingly, I would affirm the judgment of sentence.

It is axiomatic that only issues raised by specific objection in the trial may be raised on appeal. *Commonwealth v. Willis*, 380 Pa.Super. 555, 552 A.2d 682 (1988), *appeal denied*, 522 Pa. 583, 559 A.2d 527 (1989). When a specific objection to the admission of evidence is made at trial, all other reasons for excluding the evidence are waived. *Commonwealth v. McMillan*, 376 Pa.Super. 25, 545 A.2d 301 (1988). On appeal, Loner argues that the portion of Ms. Miele's testimony concerning J.L.'s use of anatomically correct dolls bolstered the credibility of the victim, thereby invading the province of the jury.

The record reveals that, at trial, a sidebar discussion was held concerning the offer of proof for Ms. Miele's testimony. N.T., March 12, 1990, at 90–93. During that discussion, Loner's counsel objected to the Commonwealth's proposed introduction of any testimony describing J.L.'s use of anatomically correct dolls. The objection was stated as follows:

Your Honor, I submit that that is *hearsay*. She didn't put [J.L.] in her room and look through a two-way window and just make observations. The anatomical dolls were used for the expressed purpose of communicating, communication from [J.L.] to Cindy as to what had allegedly occurred.

We're not talking here about just simple observation on the part of Ms. Miele just sitting at a distance and watching what [J.L.] was doing. She was specifically interacting with her. I know this based on previous testimony at the preliminary hearing as well as CYS case and it is *hearsay*. It's *hearsay* because she used them specifically because she'll testify that a young child feels uncomfortable talking about and they communicate it by the use of anatomical dolls.

Again, if she testifies as to her conclusion of that there was sexual abuse, that's acceptable. I have no objection to that. But anything beyond that in terms of what was said, including the use of anatomical dolls is clearly *hearsay*, even the structure that they were in when she was using the anatomical dolls.

N.T., March 12, 1990, at 91–92 (emphasis added).

The initial objection to the admission of Ms. Miele's testimony concerning the anatomically correct dolls was specifically grounded on hearsay. During the direct testimony of Ms. Miele, nine objections were made during the direct testimony of Ms. Miele. Eight objections were specifically based on hearsay. N.T., March 12, 1990, at 98, 99, 103, 104, 106, 107, 108. The ninth objection was grounded on the leading nature of a question asked by the Commonwealth. *Id.* at 105. Further, in his Amended Motion for a

New Trial and In Arrest of Judgment, filed on June 11, 1990, Loner sets forth his objection to the testimony concerning the dolls as follows:

> The Court erred in permitting Cynthia P. Miele to give *hearsay* testimony regarding the statements made to her by the alleged victim through the use of anatomical dolls (emphasis added).

Other than before this court on appeal, counsel in no way indicated that his objections to Ms. Miele's testimony were based upon an infringement of the jury's function of ascertaining credibility. Because counsel failed to assert that ground for any objection made at trial, or in his post trial motions, the issue must be deemed waived. Pa.R.Crim.P. 1123(a), (c)(3); *Commonwealth v. Gravely*, 486 Pa. 194, 404 A.2d 1296 (1979).

Even had the issue been properly preserved, I am not convinced that Ms. Miele's testimony was offered to "bolster the veracity" of the victim. My review of the entire trial record reveals that after the examining nurse, the examining doctor, and two investigative police officers testified, Ms. Miele was called to describe her role in the investigation of the abuse report. The Child Protective Services Act, 23 Pa.C.S. § 6361 provides that every children and youth service agency shall establish a Child Protective Service Agency responsible for receiving and investigating all reports of child abuse. § 6368 of the Act further provides:

> **§ 6368. Investigation of reports**
>
> **(a) General rule.**—Upon receipt of each report of suspected child abuse, the child protective service shall commence within 24 hours an appropriate investigation which shall include a determination of the risk to the child or children if they continue to remain in the existing home environment as well as a determination of the nature, extent and cause of any condition enumerated in the report and, after seeing to the safety of the child or children, immediately notify the subjects of the report in writing of the existence of the report and their rights

pursuant to this chapter in regard to amendment or expungement.

§ 6315(f) provides:

**(f) Conference with parent or other custodian.**—A conference between the parent, guardian or other custodian of the child taken into temporary protective custody pursuant to this section and the caseworker designated by the child protection service to be responsible for the child shall be held within 48 hours of the time that the child is taken into custody for the purpose of:

> (1) Explaining to the parent, guardian or other custodian the reason for the temporary detention of the child and the whereabouts of the child.

Here, the Commonwealth, in its offer of proof explained that Ms. Miele would be testifying about her role in the investigation. She testified on direct examination that on July 31, 1989, she received a telephone call from a state police officer regarding a report of abuse. N.T., March 12, 1990, at 95. Ms. Miele testified that because it was her responsibility to assure the safety of J.L., she telephoned Mrs. Loner at home. Mrs. Loner assured her that the children were safe. Ms. Miele explained to Mrs. Loner that she would have to interview the children and the parents the next day. Mrs. Loner indicated that she would not be willing to take off work to bring the children to the office. *Id.* at 96. The next day, Ms. Miele obtained an emergency court order which permitted her to enter the Loner's home and transport J.L. to her office. *Id.* at 97.

Ms. Miele testified that on the same day, she spoke with J.L. at her office. She testified that she was at a point in her investigation where she was attempting to determine whether the report received by her office was an accurate report. *Id.* at 102. Ms. Miele testified that J.L. was cooperative in giving her a history pertinent to her investigation. *Id.* at 106. Ms. Miele then testified that she gave J.L. anatomically correct dolls so that she could demonstrate specifically what she meant when she described what

happened to her. *Id.* at 107. With respect to the dolls, Ms. Miele testified:

> A. Yes. Anatomically correct dolls, we use cloth dolls in our office and they are equipped with all the body parts, the genitalia. So that a naked male doll has a penis and testicles, the naked female has breasts and vaginal and oral openings. So that children can use these when its difficult for them to use specific words or talk about things that have happened. We use the dolls to help the children in an interview.

*Id.* at 107.

Ms. Miele was then asked whether J.L.'s use of the dolls was consistent with her oral statement. Ms. Miele testified that it was consistent. *Id.* at 108. She testified that after the interview she contacted the District Attorney's Office and the State Police. She then determined that it would not be safe for J.L. to return to her parents' home. *Id.* at 110. Children and Youth Services then took custody of J.L. and she was placed in foster care that night. *Id.* Ms. Miele testified that on that same evening, Mrs. Loner and Mrs. Loner's mother-in-law came to the CYS office where she explained to them that she believed J.L.'s statements and accordingly had placed her in foster care until the legal work was completed. *Id.* at 110.

Relying on *Commonwealth v. Seese,* 512 Pa. 439, 517 A.2d 920 (1986); *Commonwealth v. Davis,* 518 Pa. 77, 541 A.2d 315 (1988); and *Comonwealth v. Gallagher,* 519 Pa. 291, 547 A.2d 355 (1988), the majority concludes that Ms. Miele's testimony impermissibly infringed upon the jury's function of assessing the victim's credibility. I, however, hesitate to conclude, as did the majority, that this case fits squarely within the parameters of the decisions rendered by our Supreme Court in these cases. In *Seese,* a pediatrician, was called by the prosecution as an expert on the sexual abuse of children. She testified that, based upon her own experience, young children usually do not fabricate stories of sexual abuse because they do not have sexual knowledge sufficient to supply details regarding sexual encounters.

512 Pa. at 442, 517 A.2d at 921. The Supreme Court held that:

> [T]he question of whether a witness is testifying in a truthful manner is one that must be answered in reliance upon inferences drawn from the ordinary experiences of life and common knowledge as to the natural tendencies of human nature, as well as upon observations of the demeanor and character of the witness.

*Id.*, 512 Pa. at 443, 517 A.2d at 922.

In *Seese*, the Court concluded that this direct attempt to establish the victim's credibility was improperly admitted.

Similarly, in *Davis*, after the child-victim testified, the Commonwealth introduced the testimony of a clinical child psychologist who was an expert in the treatment of child sexual abuse. The expert testified that "children who have not been involved in sexual experiences typically do not fantasize about sexual experiences." 518 Pa. at 80, 541 A.2d at 316. The Supreme Court held that the expert assessment of the truthfulness of the class of people of which the particular witness is a member is inadmissible.

In *Gallagher*, the Commonwealth presented the testimony of an expert who explained how the phobias associated with "rape trauma syndrome" affect a victim's ability to identify the attacker immediately after an assault. In an effort to explain the victim's inability to identify the defendant until four years later, the expert testified that she believed the victim suffered from rape trauma syndrome. 519 Pa. at 293, 547 A.2d at 356–57. Carefully examining the "crux" of the expert's testimony, the Supreme Court concluded that the testimony was introduced "for the sole purpose of shoring up the credibility of the victim on the crucial issue of identification," *Id.*, 519 Pa. at 294, 547 A.2d at 357, and therefore, improperly enhanced the victim's credibility in the eyes of the jury.

Examining the "crux" of Ms. Miele's testimony, I do not find, as did the majority, that the sole purpose of offering her testimony was to "bolster the veracity" of the victim.

Children and Youth Services has a statutory duty to investigate reports of abuse. *See* 23 Pa.C.S. § 6368. Ms. Miele, a CYS caseworker, was called to explain her role in that investigation. Not only does the Child Protection Act contemplate that CYS would testify in criminal proceedings, *see* 23 Pa.C.S. §§ 6381(c), 6340(a)(5), but the caseworker responsible for the child has the duty to explain to the parent the reasons for the temporary detention of the child. When Ms. Miele testified that she explained to Mrs. Loner that the reason she placed J.L. in foster care was because she believed J.L.'s statements, she was merely explaining, pursuant to § 6315(f), in laymen's language that she had found probable cause that abuse had taken place.

The scope of Ms. Miele's testimony did not go beyond that which was necessary to explain her method of investigation. She did not attempt to explain, legitimize or justify any conduct, behavior or statement of the victim, nor was her explanation that she believed J.L. directed to the jury. Her testimony provided no more support to the victim's credibility than the fact that Loner was in court on the charges of incest and sexual abuse. Had Ms. Miele not reached the conclusion that she reached after conducting the interview with J.L., no charges would have been brought against Loner. The content of Ms. Miele's testimony was nothing more than her recounting of the chronology of events which led to the charges initiated against Loner. Ms. Miele's use of the words "consistent" and "believe", when read in the context of her entire testimony, cannot be perceived to have usurped the truth determining function of the jury. Accordingly, I dissent.