615 A.2d 1337

COMMONWEALTH of Pennsylvania

v.

Eziquil HERNANDEZ, Appellant.

Superior Court of Pennsylvania.

Submitted Aug. 17, 1992.

Filed Oct. 26, 1992.

2

4

---

Michael Coard, Philadelphia, for appellant.

Kathy L. Echternach, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before ROWLEY, President Judge, and JOHNSON and BROSKY, JJ.

JOHNSON, Judge:

Eziquil Hernandez appeals from the judgment of sentence following his jury convictions for involuntary deviate sexual intercourse and corruption of a minor. The convictions stem from the sexual assault by Hernandez upon his step-nephew. Hernandez was sentenced on the involuntary deviate sexual intercourse conviction to a term of imprisonment of five to ten years; no sentence was imposed on the corruption of a minor charge. We affirm.

This appeal concerns, *inter alia*, the admissibility of testimony of a social worker regarding the procedures followed in investigating a child sexual abuse report. We are asked to further define the conditions which govern the admissibility of testimony in child sexual abuse cases.

Hernandez raises several issues for our review: (1) whether there was sufficient evidence to establish that the crimes occurred in Philadelphia County; (2) whether defense counsel was ineffective for eliciting testimony from a Philadelphia Department of Human Services social worker which improperly bolstered the victim's credibility; (3) whether defense counsel was ineffective by "permitting" an expert medical witness to testify that, assuming the truthfulness of the victim's history, the physical facts from a medical examination of the victim were consistent with the victim's allegation of anal sodomy, thus improperly bolstering the victim's credibility; (4) whether defense counsel was ineffective for failing to request a low

grade witness instruction regarding the testimony of the expert medical witness; and (5) whether defense counsel was ineffective for failing to object to two comments made by the Commonwealth during its closing argument.

■ Hernandez's claim that there was insufficient evidence to establish that the crimes occurred in Philadelphia County is frivolous. Hernandez states in his Court Bail Program application that he has been a resident of Philadelphia his entire life. The record reveals that he lived at 3901 North 5th Street, Philadelphia. The criminal incidents occurred at his apartment on 5th Street. Clearly, sufficient evidence existed that the crimes occurred in Philadelphia County. With no credible evidence to the contrary, we must conclude that the trial court properly exercised jurisdiction here.

■ We turn next to Hernandez's multiple claims of ineffective assistance of defense counsel. The standard of review is well settled:

> In reviewing a claim of ineffectiveness of counsel, we must first determine whether the issue underlying the claim has arguable merit. If the claim lacks merit, our inquiry ceases, as counsel will not be deemed ineffective for failing to pursue a baseless or meritless issue. If, however, the claim has merit, we must then determine whether the course of action chosen by counsel had some reasonable basis designed to effectuate his client's interests. Finally, appellant must show that counsel's ineffectiveness so prejudiced his case that he was denied a fair trial (citations omitted).

*Commonwealth v. Johnson*, 527 Pa. 118, 122, 588 A.2d 1303, 1305 (1991). The test for determining whether a defendant has been prejudiced is whether the reviewing court can say with confidence that the jury would have returned its guilty verdict if counsel had provided effective assistance. If we so conclude, then there is no prejudice. The law presumes that counsel is effective, so that the burden of establishing each element of an ineffectiveness claim rests entirely upon the defendant. *Commonwealth v. Mescall*, 405 Pa.Super. 326, 592

A.2d 687 (1991). With this standard in mind, we review Hernandez's claims of ineffective assistance of counsel.

Hernandez initially asserts defense counsel was ineffective in calling Patty Ann Stewart as a witness. Stewart, a social worker from the Department of Human Services (DHS), had previously testified for the Commonwealth. Hernandez alleges that the statements elicited by defense counsel during direct examination were so prejudicial, under *Commonwealth v. Seese*, 512 Pa. 439, 517 A.2d 920 (1986), and *Commonwealth v. Garcia*, 403 Pa.Super. 280, 588 A.2d 951 (1991), that defense counsel was ineffective. We disagree.

The record reveals that Stewart had investigated the initial report of child abuse in this matter. Stewart testified that during the course of the DHS investigation she had met with the victim and his mother, and had advised the mother to take the boy to a hospital for an examination. Notes of Testimony (N.T.) 7/8/91, pp. 92–98.

When called by defense counsel on direct, Stewart was asked:

Q. What did your investigation consist of?

A. My investigation consisted of interviewing the child, the mother, other collaterals such as the counselor at school, the doctor. I called the social worker at a prison and tried to talk with her. I believe that is it.

Q. You spoke with doctors?

A. Yes.

Q. In fact, you recommended he go to the hospital?

A. Yes.

Q. How did the Department of Human Services get involved in the case?

A. We received a report through a hot line, by report.

Q. Did you make that investigation then?

A. Excuse me?

Q. What was the result of your investigation?

A. The result of the investigation was that the case was indicated, meaning we found allegations to be true.

Q. You found allegations to be true?

A. Yes.

Q. How did you find that?

A. (No response).

Q. What allegations did you find to be true?

A. That the child—what the child reported.

Q. Pardon?

A. What was reported in the report.

Q. What was that?

A. That the perpetrator put his penis in the child's rectum.

Q. Where did you get that information?

A. I can't say.

Q. You have the report right there, don't you?

A. I can't say who reported this—who made the report.

Q. You are the person that investigated it, aren't you?

A. Yes.

Q. Did you make that determination?

A. I discussed the allegations and the findings in the investigation with my administrator and based on that, the decision was made that the case was indicated.

Q. When did you close the case?

A. The case was closed in March—March 21st.

Q. When you say, "The case was indicated," what does that mean?

A. That the allegations of the report were found to be true.

Q. Who told you the report was true, other than the statement of the child?

A. The report was indicated, based on the statement of the child.

Q. That is all the information you had, wasn't it?

A. Basically, yes.

Q. That is your report right there, do you want to look and see if you can find anything else?

A. We got a collateral from the medical doctor and basically, what the child says, is how the report was indicated. There is nothing else. The mother gave a story about

what the child said, but based on what the child said, that is how the case was indicated. That is all I can say. N.T. 7/9/91, pp. 32–34. Defense counsel went on to introduce the DHS report into evidence as exhibit D–1. N.T. 7/9/91, p. 35.

Relying upon *Seese, supra,* and *Garcia, supra,* for support, Hernandez claims that these statements unduly bolstered the credibility of the victim. We are mindful that the admissibility of expert testimony in child abuse cases must be evaluated cautiously in order to prevent encroachment upon the jury's function by the unfair enhancement of a child victim's credibility. *Commonwealth v. Vidmosko,* 393 Pa.Super. 236, 574 A.2d 96 (1990). After careful analysis, we conclude that these statements did not unduly bolster the victim's credibility, and that *Seese* and *Garcia* are readily distinguishable from this case.

In *Seese, supra,* our supreme court declared that it is error to admit expert testimony that young children do not usually fabricate stories of sexual abuse, in that it is a direct attempt to establish the victim's credibility. *See also Commonwealth v. Evans,* 412 Pa.Super. 332, 336, 603 A.2d 608, 610 (1992). Similarly, in *Commonwealth v. Davis,* 518 Pa. 77, 541 A.2d 315 (1988), a clinical child psychologist who was an expert in the treatment of child sexual abuse testified that "children who have not been involved in sexual experiences typically do not fantasize about sexual experiences." *Id.* at 80, 541 A.2d at 316. Our supreme court said in *Davis* that when the expert offers his assessment of the truthfulness of the class of people, of which the particular witness is a member, the testimony is inadmissible. *Id.* at 82–83, 541 A.2d at 317.

Their progeny, *Garcia, supra,* and *Commonwealth v. Dunkle,* 385 Pa.Super. 317, 561 A.2d 5 (1989), *aff'd in part, rev'd in part,* 529 Pa. 168, 602 A.2d 830 (1992), hold that expert testimony regarding the behavior patterns of victims of child sexual abuse, or the dynamics of interfamily sexual abuse and the behavior patterns of the child-victim, is inadmissible when offered to explain the conduct of a witness/victim. *Garcia,* 403 Pa.Super. at 290, 588 A.2d at 956; *Dunkle,* 529 Pa. at 180–184,

602 A.2d at 836–838. This Court has stated that the key criteria in determining whether such expert testimony is admissible is the purpose for which the testimony is offered; if it is offered solely to sustain the credibility of the victim, it should not be admitted. *Garcia,* 403 Pa.Super. at 288, 588 A.2d at 954; *see also Commonwealth v. Loner,* 415 Pa.Super. 580, 609 A.2d 1376 (1992) (petition for allowance of appeal filed September 1, 1992, No. 351 M.D. Alloc. Docket 1992) (in evaluating claim of expert improperly bolstering credibility of witness, initial determination is purpose for which testimony was offered).

Here, the purpose of Stewart's testimony was not to sustain the credibility of the victim, but to explain under a hostile direct examination by defense counsel how the DHS child abuse report was prepared. Stewart was a DHS Social Worker II in the intake unit, whose job was to perform the initial assessment when a child abuse/neglect report was received. Stewart's job duties included going to the child's home to "do an investigation and to find out what happened with the allegations and the report." N.T. 7/8/91, pp. 92–93. Stewart was not qualified as an expert at trial. Neither did she testify as to receiving any special training. *Compare Loner, supra* (reversible error for Children & Youth Services caseworker, who had undergone specialized training in area of interviewing and working with child-victims of abuse, to testify on direct for the Commonwealth in order to improperly bolster credibility of victim).

Stewart stated that, based upon the interview with the victim and his mother, a decision was made that the case was indicated. The term "indicated" is defined in the Child Protective Services Law (CPSL), 11 P.S. § 2201 *et seq.,* repealed by Act of December 19, 1990, P.L. 1240, No. 206, § 6, now recodified without material change as 23 Pa.C.S. § 6301 *et seq.* We cite to 11 P.S. § 2203, as it governs the case.

> **"Indicated report"** means a report made pursuant to this act if an investigation by the child protective service determines that substantial evidence of the alleged abuse exists based on (i) available medical evidence, (ii) the child protec-

tive service investigation or (iii) an admission of the acts of abuse by the child's parent or person responsible for the child's welfare.

*See also Commonwealth v. Kennedy,* 413 Pa.Super. 95, 604 A.2d 1036 (1992); *Lehigh County Office of Children and Youth Services v. Commonwealth, Department of Public Welfare,* 121 Pa.Cmwlth. 74, 550 A.2d 269 (1988).

Stewart essentially testified that, pursuant to the CPSL, an indicated report was made based upon her (DHS) investigation. The report was indicated based upon the allegations of the victim and other collateral information, such as the report of the examining physician. Stewart testified as a social worker; she was not qualified as, nor had she presented herself as, any type of expert in child sexual abuse. The mere identification of her occupation, without more, could not cause the jury to reasonably (and improperly) expect her to be an expert. *Commonwealth v. Cody,* 401 Pa.Super. 85, 584 A.2d 992 (1991); *Cf. Loner, supra* (Children & Youth Services caseworker testified that she had undergone specialized training in area of interviewing and working with child-victims of abuse).

Stewart testified regarding the CPSL mandated procedures followed in investigating allegations of child sexual abuse. The content of Stewart's testimony was nothing more than the chronology of events which ultimately led to the charges being initiated against Hernandez. Her testimony did not improperly intrude upon the jury's function to evaluate the credibility of the victim, neither was it highly prejudicial personal opinion. *Vidmosko,* 393 Pa.Super. at 242–243, 574 A.2d at 98–100 (not error for witnesses to testify as to procedures they followed in determining that child sexual abuse case should be prosecuted). Furthermore, we discern no merit in Hernandez's allegation that Stewart's statement impermissibly prejudiced him, but the same information in the report Stewart prepared, which was introduced into evidence, did not.

Moreover, the trial judge gave a cautionary instruction to the jury immediately following the statements in question. This instruction correctly informed the jury that Stewart, in

performing her job, made certain evaluations and reached certain conclusions separate and apart from the jury's function. The instruction specifically warned that only the jury was the factfinder in the case, and it "must not and may not accept any standard adopted by DHS." N.T. 7/9/91, p. 42. This instruction is sufficient to cure any possible prejudice that may have resulted from Stewart's comments. *Vidmosko, supra.*

We distinguish this case from *Loner, supra. Loner* involved a Children & Youth Services caseworker who testified that she had undergone specialized training in the area of interviewing and working with child-victims of abuse. *Loner,* 415 Pa.Super. at 583, 609 A.2d at 1377. Stewart was not qualified as an expert, nor did she offer any testimony from which the jury could reasonably conclude that she had specialized skills in dealing with child sexual abuse. In *Loner,* the Commonwealth offered the testimony to bolster the credibility of the victim. Here, Stewart's explanation of the CPSL procedures she had followed in conducting the DHS investigation were elicited by defense counsel under hostile questioning. The scope of Stewart's testimony did not go beyond that which was necessary to explain her method of investigation. Thus, the "expertise", purpose, and scope of Stewart's statements are distinguishable from *Loner.*

For all of the foregoing reasons, we conclude that Hernandez has not suffered ineffective assistance of counsel here. *Johnson, supra.*

■ Even assuming Hernandez's argument possesses arguable merit, we conclude that defense counsel was pursuing a reasonable strategy in attempting to attack the credibility of Stewart, and thus the victim's credibility. Our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interests. The test is not, in hindsight, whether other alternatives were more reasonable. *Commonwealth v. Gass,* 514 Pa. 287, 523 A.2d 741 (1987). We conclude that defense counsel's actions were reasonably designed to effectu-

ate the defense that the victim was not truthful, and that the DHS (and criminal) investigation had proceeded erroneously upon this assumption. *Cf. Commonwealth v. Ly,* 528 Pa. 523, 536, 599 A.2d 613, 619 (1991) (counsel proceeding with reasonable defense was not ineffective in eliciting damaging testimony in cross-examination of Commonwealth witness).

Assuming *arguendo* that defense counsel's actions had no reasonable basis in effectuating Hernandez's interests, Hernandez fails to establish that undue prejudice, denying him a fair trial, accrued unto him as a result. As our review of the record has established, the trial court's cautionary instruction was sufficient in that it immediately alleviated any unduly prejudicial effect that Stewart's statements may have had upon the jury. Moreover, the purpose of the statement was not to bolster the victim's testimony, but to explain, under adverse questioning, how the DHS investigation progressed. Hernandez makes no claim of prejudice as to the introduction of the DHS report into evidence, from which the jury could reasonably conclude that Stewart accurately reported the statements the victim made to her during the course of the investigation.

The evidence presented at trial is as follows: the victim testified as to the events surrounding the sexual assault, which were essentially corroborated by his mother and the medical examination some five days after the assault. N.T. 7/8/91, pp. 20–92. Stewart corroborated the mother's testimony that a lady working for the city had visited her about three days after the assault, had spoken with her and her son, and had recommended that she take him to the hospital. N.T. 7/8/91, pp. 80–81, 94–97. Other than calling Stewart and questioning her as to the circumstances surrounding the DHS investigation, Hernandez's only witness was Ms. Vini Greco, who testified that she had known Hernandez for 12 years and that his reputation in the community was very good. N.T. 7/9/91, pp. 43–44.

■ This Court has consistently stated that the uncorroborated testimony of a victim is sufficient to sustain a conviction for rape. *See Cody,* 401 Pa.Super. at 89, 584 A.2d at 993

(citing *Commonwealth v. Smith,* 280 Pa.Super. 222, 421 A.2d 693 (1980)). The testimony of the victim in this case, corroborated in part by his mother, is sufficient to sustain Hernandez's conviction. Stewart's testimony provided no more support to the victim's credibility than the fact that Hernandez was in court on the charges of involuntary deviate sexual intercourse and corruption of a minor. The content of Stewart's testimony was nothing more than her recounting of the chronology of events which ultimately led to the charges initiated against Hernandez. We cannot conclude that Stewart's statements were so prejudicial as to deny Hernandez a fair trial. *Cody, supra; Mescall, supra.* For all of these reasons, Hernandez's first claim of ineffectiveness fails.

■ Hernandez's second claim of ineffective assistance also fails. Hernandez alleges that defense counsel was ineffective in "permitting" a pediatrician, Dr. Allan DeJong, a specialist in child abuse and neglect, to testify, wherein DeJong's testimony was prohibited by *Garcia, supra.*

At trial, DeJong compared the medical records resulting from the examination of the victim at Saint Christopher's Hospital for Children with a hypothetical question which contained the victim's history of the assault and subsequent events up to the time of the examination. DeJong testified that he found the physical facts, as stated in the medical record, consistent with the child's allegation of anal sodomy. N.T. 7/9/91, pp. 11–16. DeJong went on to describe several other possible methods not involving sexual contact which would also be consistent with the medical findings. N.T. 7/9/91, pp. 20–23.

There is no merit to the claim that DeJong's testimony was prohibited pursuant to *Garcia,* and that defense counsel was ineffective in "permitting" DeJong to so testify. The general rule governing admissibility of expert testimony is that "[e]xpert testimony is permitted only as an aid to the jury when the subject matter is distinctly related to a science, skill, or occupation beyond the knowledge or experience of the average layman. Where the issue involves a matter of common knowledge, expert testimony is inadmissible." *Commonwealth v.*

*O'Searo,* 466 Pa. 224, 229, 352 A.2d 30, 32 (1976) (citations omitted).

We are unaware of any precedent that establishes that an expert, on cross-examination, may not explain the assumptions on which he bases his opinion. It is not errone-ous for a treating physician to testify that the physical facts he observed were consistent with the allegation of rape. *Com-monwealth v. Seigrist,* 253 Pa.Super. 411, 385 A.2d 405 (1978). Furthermore, a medical expert may base his opinion upon facts which are in the record and reports of others which are not in medicine but customarily relied upon in practicing medicine, including the observations of lay persons. *Com-monwealth v. Hathaway,* 347 Pa.Super. 134, 500 A.2d 443 (1985). It follows that a pediatrician such as DeJong, qualified as a medical expert, may testify that the physical facts ob-served and reported by the treating physician were consistent with the allegation of anal sodomy set forth in the history of the child. The medical history of a patient is customarily relied upon in practicing medicine. Consequently, it is not error for the expert to testify on cross-examination that his opinion assumes the truthfulness of the history supplied by the victim. We conclude that the testimony of DeJong is admissible, and there is no merit to the underlying issue in this ineffective assistance of counsel claim.

We also observe that DeJong's testimony is readily distin-guishable from that prohibited by *Garcia. Garcia* prohibits expert testimony regarding the behavior patterns of the vic-tims of child assault when it is solely offered to explain the conduct of the victim. *Garcia,* 403 Pa.Super. at 288, 588 A.2d at 954. Here, we have a medical expert testifying that the physical findings of the medical exam were consistent with the victim's allegations of anal intercourse, and on cross-examina-tion stating that he assumed the truthfulness of the victim's history in reaching that conclusion. We are unable to con-clude that his testimony improperly bolstered the victim's credibility and withdrew the issue of witness credibility from the jury. *Id.* Therefore, we reject Hernandez's second claim of ineffectiveness.

Turning to Hernandez's third allegation of ineffective assistance of counsel, we determine that it is without arguable merit. Hernandez claims that defense counsel's failure to request a low grade expert witness instruction regarding the testimony of DeJong renders defense counsel constitutionally ineffective. We conclude that there is no basis for giving a low grade witness instruction here. Thus, Hernandez's underlying argument is without merit.

Hernandez relies upon Pennsylvania Suggested Standard Criminal Jury Instruction 4.10A, and *Commonwealth v. Thomas,* 448 Pa. 42, 292 A.2d 352 (1972), for the proposition that opinion evidence should be classified as low grade when the expert testifies, not from personal observation, but when the expert expresses an opinion in response to a hypothetical question, or where the expert's opinion, based on theoretical assumptions, is rebutted by direct evidence. Our analysis of the history of the low grade witness instruction leads us to conclude that in actual practice, application of the low grade witness instruction is more constrained.

The Pennsylvania Suggested Standard Criminal Jury Instructions, in the Subcommittee Note to 4.10A, states that the low grade witness instruction is based upon *Thomas, supra; Commonwealth v. Heller,* 369 Pa. 457, 87 A.2d 287 (1952); *Commonwealth v. Patskin,* 375 Pa. 368, 100 A.2d 472 (1953); *Commonwealth v. Woodhouse,* 401 Pa. 242, 164 A.2d 98 (1960); and *Commonwealth v. Ahearn,* 421 Pa. 311, 218 A.2d 561 (1966). With the exception of *Thomas,* each of these cases concerns opinion testimony by a psychiatrist, usually where insanity had been raised as a defense in a criminal trial.

This and similar testimony as to insanity in many other homicide cases justify the rule or axiom that in such cases expert testimony is entitled to little weight against positive facts. Expert medical opinions are especially entitled to little or no weight when based upon insignificant or (partly) erroneous facts or a feigned state of mind or an inaccurate past history, or upon unreasonable deductions, or an erroneous conception of legal insanity.

*Patskin,* 375 Pa. at 375–376, 100 A.2d at 475. A fair characterization of the low grade witness instruction would be that it was designed specifically for dealing with the competency of lay witnesses and psychiatrists testifying on questions of sanity.

A low grade witness instruction is not applicable here. This case is an involuntary deviate sexual intercourse case. No one had been asked to testify as to Hernandez's sanity in a homicide. DeJong's statement was not rebutted by other expert testimony, or by the physical evidence. There is no basis for giving a low grade witness instruction. *Cf. Hathaway, supra.* Counsel cannot be deemed ineffective for failing to pursue a meritless issue. *Johnson,* 527 Pa. at 122, 588 A.2d at 1305. Therefore, this claim is rejected.

■ Hernandez alleges in his final claim that defense counsel was ineffective for failing to object, during the Commonwealth's closing argument, to an indirect reference to Hernandez's silence and a statement that DeJong and Stewart corroborated the victim's testimony. This claim is without merit.

Hernandez directs us to the following portion of the prosecutor's closing argument as evidence of an "indirect reference to appellant's silence" at trial:

With the character evidence, basically, what—and I apologize because I don't remember her name—what this young lady testified to here, was what she knew of Mr. Hernandez in the neighborhood, in the community and that is that which he wished to show people in the community. We don't know, except what [the victim] has to tell you, of what happens in the privacy of that man's bedroom. The only two people on earth who know that is [the victim] and the Defendant.

She is a nice lady and she basically said that Mr. Hernandez, from what she knew of him, from that part that he wishes to present to the community; that is all she knows about him. [The victim] told you another part about him, another fact about him and I submit that you consider that and that [the victim] did not have any reason to lie. He did

not have anything against the Defendant and neither did his mother.

N.T. 7/9/91, pp. 69–70.

The prosecutor's closing argument does not reflect upon Hernandez's decision not to testify. A prosecutor must have reasonable latitude in presenting a case to the jury and must be free to present his or her arguments with logical force and vigor. *Commonwealth v. Rolan*, 520 Pa. 1, 549 A.2d 553 (1988). Here, the prosecutor has distinguished the public reputation testimony, offered by Greco on behalf of Hernandez, from the testimony concerning the alleged sexual assault offered by the victim. The prosecutor fairly argues from the facts that what one does in the privacy of one's bedroom is generally not a matter of public knowledge, and that Greco did not know whether Hernandez had sexually assaulted the victim. This is within the permitted scope of argument. *Rolan, supra.* Because there is no "indirect reference" in the prosecutor's closing argument to Hernandez's silence at trial, we are constrained to conclude that this contention is meritless.

 Moreover, were we to accept this claim, the prosecutor's remark must imply the defendant had a duty to testify in order to constitute error. *Commonwealth v. Everett*, 297 Pa.Super. 320, 443 A.2d 1142 (1982). In context, the prosecutor's statement does not imply that Hernandez had a duty to testify. There is no objectionable error here. Thus, on either basis, Hernandez's claim is without merit, and defense counsel cannot be deemed ineffective for not raising a meritless objection. *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981). *Also see Everett, supra.*

The prosecutor's statement that the testimony of DeJong and Stewart corroborated the victim's testimony is not objectionable. It is clearly within the scope of fair argument. An attorney cannot be deemed ineffective for refusing to act on a baseless claim. *Pettus, supra.*

18

Accordingly, for the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.